UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

AARON YOUNG,

Defendant.

18-CR-834-08 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

As requested in the attached letter, the Court appoints Alessandria DeBlasio as counsel for defendant Aaron Young, pursuant to the District's CJA plan, for the limited purpose of representing Mr. Young in connection with his submission of an application for compassionate release. The Government's response to that application will be due two weeks after it is filed

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 26, 2022
       New York, New York

**ALESSANDRA DEBLASIO**
ATTORNEY AT LAW
299 BROADWAY, SUITE 1803
NEW YORK, NY  10007
TELEPHONE (212) 321-7084
ad@adeblasiolaw.com

January 25, 2022

<u>By Electronic Mail</u>
Judge Paul A. Engelmayer
U.S. District Court for the
Southern District of New York
40 Centre Street, Room 2201
New York, NY  10007
EngelmayerNYSDChambers@nysd.uscourts.gov

Re:  Request for CJA Appointment in *United States v. Aaron Young*, 18-cr-834-8

Dear Judge Engelmayer:

I write to respectfully request that Your Honor appoint me to represent Defendant Aaron Young pursuant to the Criminal Justice Act ("CJA"), *nunc pro tunc*, in criminal matter 18-cr-834-8, for the limited purpose of seeking compassionate release.  I entered a Notice of Appearance in this case on January 6, 2022.

I am a member of the CJA panel of the U.S. Court of Appeals for the Second Circuit, which appointed me to represent Mr. Young on December 23, 2019, following his conviction in 18-cr-834-8 (PAE).  *See* Appointment Order, enclosed.

In representing Mr. Young on appeal, I became very familiar with the district court proceedings of the entire criminal case, reviewing the trial transcript of two of his co-defendants, all relevant and available documents relating to co-defendant guilty pleas, as well as all sentencing filings of the eight co-defendants whom this Court sentenced prior to Mr. Young's appeal.  For the appeal, I spent a total of 280 hours working on Mr. Young's case.

I seek appointment now because Mr. Young developed a measure of trust in me during the course of the appeals process and asked me to file a compassionate release motion on his behalf. *See* Young Corrlinks, enclosed. A similar situation arose this past year when the Honorable Kimba M. Wood appointed me CJA counsel in criminal matter number 13-147, for the limited purpose of seeking compassionate release for Defendant Flor Soto, whom I had just represented on appeal. In that matter, counsel of record in the District Court consented; in this matter, I reached out to counsel Aaron Mysliwiec, who has similarly consented. (In addition, over the past 15 years, I have taken to trial a civil matter in this District and a RICO double homicide in the Eastern District of New York, and have handled many criminal cases resulting in guilty pleas in both Districts, albeit none pursuant to the CJA.)

I intend to file the motion in Defendant Young's criminal case, seeking compassionate release on two grounds. First, since his incarceration, Mr. Young has become a diabetic, which is a CDC-recognized underlying medical condition that increases the risk to his health should he contract COVID-19. More significantly, his diabetic condition is acute – requiring daily insulin injections and pills – on account of the Bureau of Prisons' ("BOP") failure to test his glucose levels during the first two years of incarceration, such that by the time the BOP discovered his diabetes, Mr. Young was critically ill, having temporarily lost much of his vision, among other symptoms. Given the limitations on the prison health system during COVID, inmates such as Mr. Young who suffer from *acute* cases of diabetes are at particularly high risk of harm due to recurring lock-downs and short staffing, which affect the regular and timely provision of their insulin injections.

Second, *following* Mr. Young's sentencing in this case for conspiracy to distribute heroin – based on a Guidelines range calculated for a quantity of *fentanyl analogue* – this Court made a finding at a co-defendant's sentencing that the amount of fentanyl analogue the conspiracy was responsible for was *unquantifiable*: "As to the gang's narcotics dealing[, . . . it] sold multi-kilogram quantities of heroin. It also sold fentanyl, although the trial record, as I said earlier, doesn't allow me to quantify quite how much." *See* excerpt of Sentencing Transcript of Co-Defendant Aljermiah Mack, p. 69 enclosed. Because this Court could not determine a quantity, it concluded that it must rely on the lower offense level indicated for *heroin* in calculating Co-defendant Mack's Guidelines range. *Id*. p. 14.

The Hon. Paul A. Engelmayer
January 25, 2022
Page **3** of **3**

The result was a sentence of 204 months for Mr. Mack (Criminal History VI), convicted at trial on the same count for which Mr. Young (Criminal History III) received 240 months after pleading guilty. (The Court also found when sentencing Mr. Mack that the four-level enhancement under § 2D1.1(13) for misrepresenting a substance containing fentanyl as heroin – which the Court earlier applied at Mr. Young's sentencing – was *inapplicable* because it came into effect six months *after* the head of the conspiracy (who supplied both Mack and Young) became a cooperator.  *See* Sent'g TR of Mack at 14-16.) The resulting disparity in the sentences of co-defendants Young and Mack – which was a factor not considered at Mr. Young's sentencing – constitutes a factor under 18 U.S.C. § 3553(a) to be considered on a motion for compassionate release.

Because the issues involved in the anticipated motion for compassionate release are complex, and Mr. Young's health issues and documented limited intellectual capacity prevent him from filing such a motion in a *pro se* capacity, he needs the assistance of counsel. Mr. Young previously qualified for appointed counsel under the CJA plan, and he remains indigent and without resources to retain an attorney. *See United States v. Cirineo*, 372 F. App'x 178, 179 (2d Cir. 2010) (summary order) (explaining that while "there is no statutory right to counsel under the Criminal Justice Act in connection with a § 3582(c) motion, [] the provision of counsel for such motions should rest in the discretion of the district court") (citation omitted).

I thank Your Honor in advance for considering my appointment as counsel to Mr. Young under the CJA plan for the limited purpose of assisting Mr. Young's anticipated motion for compassionate release and related matters.

Respectfully,

_____
Alessandra DeBlasio

Enc.  -2d Cir. Order (CJA appointment)
      -Defendant Aaron Young's Corrlinks message requesting appointment
      -Transcript excerpts from the sentencing of Co-Defendant Aljermiah Mack

CC (w/ Enc.):  Michael Longyear, Assistant U.S. Attorney
               Jacob Warren, Assistant U.S. Attorney

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

    At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand and nineteen.

United States of America,

        Appellee USA,

v.

Kifano Jordan, AKA Shotti, Roland Martin, AKA Ro Murda, Aaron Young,

        Defendants - Appellants.

**ORDER**

Docket Nos. 19-3032(L), 19-3365(Con), 19-4070(Con)

    Aaron Mysliwiec moves to be relieved as counsel for Appellant Aaron Young.

    IT IS HEREBY ORDERED that the motion to be relieved is GRANTED. Alessandra DeBlasio, 299 Broadway, Suite 1803, New York, NY 10007, is assigned as new counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Attorney DeBlasio is directed to review Local Rule 12.2 regarding the filing of Form B and Local Rule 31.2 regarding procedures for setting the filing dates for the submission of briefs.

    For the Court:

    Catherine O'Hagan Wolfe,
    Clerk of Court

# Alessandra DeBlasio

| | |
|---|---|
| **From:** | YOUNG AARON (86428054) |
| **Sent Date:** | Friday, January 21, 2022 2:09 PM |
| **To:** | ad@adeblasiolaw.com |
| **Subject:** | RE: RE: law |

Dear Ms.DeBlasio,
I would like you to represent me to file a compassionate release motion.you have been my CJA lawyer for the past years for my appeal and i would like you to continue.please ask the court to appoint you for me.if the court needs documents from me,let me know.I still have no resources and cannot afford to hire an attorney for my compassionate release on my
crimial case 18-834.
Aaron Young

```
    K2OHMACS

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4            v.                              18 Cr. 834 (PAE)

 5  ALJERMIAH MACK,

 6                                            Sentence
                    Defendant.
 7
    ------------------------------x
 8
                                              New York, N.Y.
 9                                            February 24, 2020
                                              3:35 p.m.
10

11  Before:

12                    HON. PAUL A. ENGELMAYER,

13                                            District Judge

14                         APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    MICHAEL LONGYEAR
17  JACOB E. WARREN
    JONATHAN REBOLD
18       Assistant United States Attorneys

19  LOUIS V. FASULO
    MICHAEL GIORDANO
20  ALEX STEPHEN HUOT
    ELYAN SCHULMAN
21       Attorneys for Defendant

22  Also Present:  Hannah Harney, Paralegal USAO

23

24

25
```

to the quantity of fentanyl analogue that was within the scope of Mack's conspiracy. That issue is for the Court to resolve by a preponderance of the evidence.

Having reviewed the trial record, the Court cannot reliably so find, although it is certainly a possibility. The recorded prison calls to which the government has directed the Court in which Mack and Cruz discussed drug quantities involved heroin, not fentanyl. And while the record comfortably supports a finding that at least some of the mixtures and substances containing heroin that Mack possessed and distributed also contained fentanyl, it does not offer guidance to the Court as to the quantity of substances containing fentanyl that Cruz sold in connection with the Nine Trey narcotics conspiracy. It does not quantify sufficiently the fentanyl sales that Cruz made in context in which the quantity sold would have been reasonably foreseeable to his Nine Trey coconspirator Mack for the Court to determine, other than by speculation, that such quantities exceeded one kilogram.

It's unsurprising that the trial record is sparse on this point. Given that the mandatory minimum charge here was keyed to heroin, the evidence adduced at trial about drug quantity understandably was keyed to heroin. For example, Cruz testified that he sold Mack himself heroin on several occasions. He testified to selling Mack heroin in specific weights (150 grams, 200 grams, and 500 grams). He testified

that Mack owed Cruz approximately $9,000 for heroin that Mack bought on consignment. There isn't any comparable testimony about any particular fentanyl sale.

Accordingly, given the indeterminate record as to the quantity of fentanyl and the jury's affirmative determination attributing more than one kilogram of substances containing heroin to Mack, the Court applies a base offense level keyed to heroin sales of 30 under Section 2D1.1(c)(5).

Second, the Court holds, with Mack, that the four-point fentanyl misrepresentation enhancement does not apply. The government seeks this enhancement pursuant to Section 2D1.1(b)(13), which states: "If the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue, increase the offense level by four levels."

This provision is the result of a recent amendment to the sentencing guidelines aimed at combating some of the worst outcomes of the opioid crisis. The sentencing commission explained, in providing a reason for the amendment, the following:

"Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using. To address this harm, the amendment adds a new specific offense characteristic at Section 2D1.1(b)(13) to provide for a

1    four-level increase whenever the defendant knowingly
2    misrepresented or knowingly marketed as another substance a
3    mixture or substance containing fentanyl or fentanyl analogue.
4    The commission determined that it is appropriate for
5    traffickers who knowingly misrepresent fentanyl or a fentanyl
6    analogue as another substance to receive additional punishment.
7    If an offender does not know the substance contains fentanyl or
8    a fentanyl analogue, the enhancement does not apply.  The
9    specific offense characteristics includes a mens rea
10   requirement to ensure that only the most culpable offenders are
11   subjected to these increased penalties."
12            Crucially here, by its terms, this amendment was
13   effective as of November 1, 2018.
14            At trial, although the quantity of sales by Mack
15   personally of fentanyl was not established, Cruz testified that
16   Mack and Cruz discussed the fact that drugs Mack was selling
17   had "white spots" in it, which Mack new was fentanyl.
18   Transcript at 903.  When Cruz told Mack that it was fentanyl,
19   Mack responded that he "didn't care" because Mack's customers
20   "still liked it."  *Id*.  And Mack continued to buy the mixture
21   in distribution quantities from Cruz thereafter.  *Id.* at 904.
22   Thus, while Cruz and Mack marketed the product as heroin, they
23   both knew that it contained fentanyl.  This was the entirety of
24   the evidence as to Mack's misrepresentation of a substance
25   containing fentanyl.

                Cruz also testified on direct examination that he
began cooperating with the government "around May 2018."
Transcript at 871.  On redirect Cruz testified that after
May 2018, he did not engage in any drug deals or have any
drug-related conversations with Mack.  See transcript at 1352.
Indeed, while Mack never withdrew from the narcotics
conspiracy, the record is devoid of any evidence that Mack
misrepresented a substance containing fentanyl after May 2018,
much less after the amendment's effective date of November 1,
2018.

                The Court cannot comfortably, under these
circumstances, find that a guidelines enhancement that only
became effective six months later applies.  Accordingly, the
Court does not apply the four-level enhancement for fentanyl
misrepresentation.  However, however, Mack's dissembling to
customers at an earlier point so as to conceal that they were
buying fentanyl is a fact that the Court views as aggravating,
whatever the guideline effective date is.  So while it doesn't
affect the calculation of the guideline range, it very much is
properly considered as relevant in the Court's broader
assessment of the Section 3553(a) factors, and the Court will
so consider it today.

                Third, as to the two-level enhancement for possession
of a firearm in connection with the narcotics conspiracy,
pursuant to Section 2D1.1(b)(1), the Court agrees with Mack

1  testimony.  There doesn't seem to be any testimony which
2  refutes that during the course of the trial and then would say
3  that Mack was a beneficiary in any way of the drug dealing that
4  Cruz had been ongoing.
5          THE COURT:  If your point is that Cruz had a drug
6  dealing operation that's independent of the gang, sure, but I'm
7  focusing really on what Cruz brought to the gang, which was
8  clearly some drug dealing that included both heroin and,
9  although the quantity is a little elusive, some fentanyl too.
10          MR. FASULO:  Then we also have the testimony about Mel
11  Murda being the one that actually did recruit Cruz at the end
12  of the day, and we also had the testimony of the --
13          THE COURT:  I credit both.
14          MR. FASULO:  -- the line of conflict between Mel Murda
15  and my client, Mack.
16          THE COURT:  Mr. Fasulo, you've had plenty of cases and
17  you know that human relations are complicated, and people who
18  are teammates and gang members also have fights.  And that's
19  very much on display here, as in so many other gang cases.  The
20  idea that Mel Murda, Jamel Jones, recruited Cruz is completely
21  consistent with the idea that your client recruited Cruz.
22  There doesn't have to be one GM; there can be an assistant GM.
23  The point is they're both responsible for that very important
24  and very damaging addition to the gang.
25          MR. FASULO:  Yes, Judge, I understand that.  I also

1  was shooting back and forth in which you tried to have Jones
2  murdered. Fortunately, no one got shot, apparently, either on
3  the occasion when you pulled a gun while committing the robbery
4  or when your gang rival shot at you in retaliation, but that is
5  to some degree fortuitous. When you pull a gun on a violent
6  gang leader and rob him of his car, you are asking for mayhem
7  to break out, and you are very, very fortunate today, Mr. Mack,
8  that no one got shot or otherwise hurt as a result of the
9  violent crimes you either engaged in or helped bring about.
10          As to the gang's narcotics dealing, you were deeply
11  and personally involved in that. You personally recruited
12  Kristian Cruz to the gang. He was a prodigious supplier and
13  dealer of heroin and fentanyl, as you knew he would be. The
14  gang sold multi-kilogram quantities of heroin. It also sold
15  fentanyl, although the trial record, as I said earlier, doesn't
16  allow me to quantify quite how much.
17          You personally participated in some of those sales.
18  It goes without saying that as a drug dealer and as a leader in
19  a gang that sold heroin and fentanyl, you caused a lot of
20  damage to society. Fentanyl and heroin use destroys lives. It
21  destroys families. It destroys communities. It produces
22  addiction. It correlates with violence. By recruiting Cruz
23  and by encouraging drug dealing by Cruz, by participating in
24  drug dealing yourself, you caused such damage. Now, it is lost
25  to history what happened to the downstream users of the drugs