AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Sothern | |
|---|---|---|---|
| Name *(under which you were convicted)*:<br>Aaron Young | | | Docket or Case No.:<br>18-cr-834 |
| Place of Confinement:<br>FCI-Hazelton | | Prisoner No.:<br>86428-054 | |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* | |
| | V. | Aaron Young | |

### MOTION

1.   (a) Name and location of court which entered the judgment of conviction you are challenging:

    Southern District of New York
    500 Pearl Street
    New York, N.Y. 1007

    (b) Criminal docket or case number (if you know):  18-cr-834

2.   (a) Date of the judgment of conviction (if you know):  12/2/2019
    (b) Date of sentencing:  12/2/2019

3.   Length of sentence: 240 month

4.   Nature of crime (all counts):

    Mr. Young pled guilty to Count One of the sixth superseding indictment charging him with racketeering conspiracy under 18 U.S.C. § 1962(d).

5.   (a) What was your plea?  (Check one)
        (1)  Not guilty ☐      (2)  Guilty ☑      (3)  Nolo contendere (no contest) ☐

6.   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?
    N/A

6.   If you went to trial, what kind of trial did you have?  (Check one)     Jury ☐     Judge only ☑

7.   Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☑     No ☐

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?    Yes ✔    No ☐

9. If you did appeal, answer the following:

    (a) Name of court: Second Circuit Court of Appeals

    (b) Docket or case number (if you know): 20-3881

    (c) Result: Denied

    (d) Date of result (if you know):

    (e) Citation to the case (if you know):

    (f) Grounds raised:

    sentence is procedurally unreasonable; because the district court adopted the PSR's guideline calculations; and greater than necessary when considering the § 3553(a) factors including his cognitive limitations, and when all eight of his co-defendants received below-guideline sentences or bottom-of-the- range sentences far below his sentence

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ✔

        If "Yes," answer the following:

        (1) Docket or case number (if you know): N/A

        (2) Result:

        (3) Date of result (if you know):

        (4) Citation to the case (if you know):

        (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐    No ✔

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: N/A

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

AO 243 (Rev. 09/17)

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: _____

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:    Yes ☐    No ☐

    (2)  Second petition:    Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**    GROUND ONE: (a) SUPPORTING FACTS (INEFFECTIVE COUNSEL AT SENTENCING)

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
See Meemorandum of law attached hereto.

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?
Yes ☑     No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐     No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:
Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?
Yes ☐     No ☐

AO 243 (Rev. 09/17)

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** N/A

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

AO 243 (Rev. 09/17)

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐       No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐       No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐       No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** N/A

      (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

      (b)  **Direct Appeal of Ground Three:**

          (1)  If you appealed from the judgment of conviction, did you raise this issue?

              Yes ☐     No ☐

          (2)  If you did not raise this issue in your direct appeal, explain why:

      (c)  **Post-Conviction Proceedings:**

          (1)  Did you raise this issue in any post-conviction motion, petition, or application?

              Yes ☐     No ☐

          (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

          (3)  Did you receive a hearing on your motion, petition, or application?

              Yes ☐     No ☐

          (4)  Did you appeal from the denial of your motion, petition, or application?

              Yes ☐     No ☐

          (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

              Yes ☐     No ☐

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   N/A

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

GROUND ONE: (INEFFECTIVE COUNSEL AT SENTENCING), properly addressed in a section 2255 motion.

AO 243 (Rev. 09/17)

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?          Yes ☐          No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.
N/A

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)  At the preliminary hearing:
Alessandre DeBlasio

(b)  At the arraignment and plea:
Alessandre DeBlasio

(c)  At the trial:
Alessandre DeBlasio

(d)  At sentencing:
Alessandre DeBlasio

(e)  On appeal:
Alessandre DeBlasio

(f)  In any post-conviction proceeding:
N/A

(g)  On appeal from any ruling against you in a post-conviction proceeding:
N/A

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☑

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:
N/A

(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☐

AO 243 (Rev. 09/17)

18.    TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Petition timely filed under section 2255(f)(1).

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

(1)    the date on which the judgment of conviction became final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:
Re-sentencing on count one

or any other relief to which movant may be entitled.

N/A
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ 3/1/2022 _____ .

(month, date, year)

Executed (signed) on _____ 3/1/2022 _____ (date)

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.
N/A

# United States District Court
# Southern District Of New York

UNITED STATES OF AMERICA,

Plaintiff - Appellee,


v.                        Case No.18-cr-834


AARON YOUNG,

Defendant/Petitioner.

_____/


## MEMORANDUM OF LAW IN SUPPORT OF SECTION 2255 MOTION


NOW COMES the Petitioner, Aaron Young, (hereinafter "Young" or "Petitioner"), proceeding in this matter, pro-se and submits the instant Memorandum of law in support of his section 2255 motion.

In support hereof, Petitioner Young shows the following:

2255 motion(s) Issues:

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by Young. For the reasons stated below, this Honorable Court should grant the petition.

## I.  28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a petition in the court that imposed the

1

sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Generally, "28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the court need not hold a hearing if "the motion and the files and record of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. After reviewing the motion, files, and records in this case, liberally construing Young' pro se motion, this Court should find that a hearing is necessary.

It is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only "legal conclusions with no supporting factual allegations." Sanders v. United States, 373 U.S. 1, 19, 83 S. Ct. 1068, 1079, 10 L.Ed.2d 148 (1962); Eaton v. United States, 384 F.2d 235 (9th Cir. 1967). Allegations of "a vague, conclusory or palpably incredible nature" do not raise factual issues which require a full hearing. Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962).

II. Standard of Review

Young brings this petition pro se. Courts are required to construe liberally pleadings filed by pro se litigants to allow for the development of potentially meritorious claims. See Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam). These pleadings are held to a less stringent standard than those drafted by

attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). However, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

## III. Discussion

A. Timeliness Under the Anti-Terrorism and Effective Death Penalty Act

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year period of limitation within which a petitioner must bring any federal habeas corpus petition. 28 U.S.C. § 2255. According to the statute, the limitation period shall run to the last of:

(1) The date on which the judgment of conviction becomes final;

(2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) The date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). This Court should find, under the facts of this case that Young's petition is timely filed.

When an appellate court affirms on direct appeal, the clock on a Section 2255 petition starts to run when the time expires for filing a petition for a writ of certiorari contesting the affirmation of the conviction. Clay v. United States, 537 U.S. 522, 524-25 (2003).

**Discussion**

# GROUND ONE: (a) SUPPORTING FACTS (INEFFECTIVE COUNSEL AT SENTENCING)

## RELEVANT FACTUAL BACKGROUND

(i)     Aaron Young pled guilty on April 19, 2019, before Judge Paul A. Engelmayer, United States District Judge in the Southern District of New York.  He was number 8 of 12 men charged in a racketeering conspiracy in criminal case number 18-834.  Mr. Young pled guilty to Count One of the sixth superseding indictment charging him with racketeering conspiracy under 18 U.S.C. § 1962(d); and on December 2, 2019, the court sentenced him to 240 months of incarceration and three years of supervised release.  (A145-147) Mr. Young timely filed a notice of appeal on December 9, 2019.[1]

(ii)    Aaron Young, a 38-year-old intellectually-disabled mildly-retarded man, pled guilty as an associate of a gang run by his childhood friend Co-Defendant Jamel Jones. The count to which he pled guilty charged him with conspiracy to violate the racketeering statute, with underlying predicate acts of distribution of narcotics and attempted murder.

   Mr. Young grew up in Brooklyn's Marcy Housing Projects to crack-addicted parents. He was born addicted to crack, weighing 1 lb. 6 oz., and spent his first year of life in the hospital.  Until the age of ten, he lived with his parents and siblings.  The parents

---

[1] 12/03/2019     379     JUDGMENT as to Aaron Young (8). The Defendant pleaded guilty to Count 1s of the S6 Indictment. All open counts are dismissed on the motion of the United States. IMPRISONMENT: Two hundred forty (240) months. The Court recommends that the defendant be designated to FCI Fort Dix, or, failing that, a facility as close to the New York City area as soon as possible. The Court further recommends that the Bureau of Prisons provide the defendant with mental-health, and drug treatment, to the extent he is eligible. SUPERVISED RELEASE: Three (3) years. ASSESSMENT: $100.00 due immediately. (Signed by Judge Paul A. Engelmayer on 12/3/2019) (lnl) (Entered: 12/03/2019)

physically and psychologically abused the children, locked them in their bedroom for days at a time, deprived them of food, clothing, water, electricity and, in Mr. Young's case, beat him and once broke his arm. (SA21-23, 30: PSR ¶¶112-122; and SA36-48, the Mandal Expert Report)

(iii)   When Mr. Young was ten, he and one of his sisters moved to live with a nearby paternal aunt, her husband and their five children. There he was molested, and he began to run away, spending nights sleeping on rooftops. At the age of 11, he received an IQ score of 63. He nevertheless attended school, overcame some of his intellectual disabilities, though he was frustrated by his limitations.

(iv)   The gang Mr. Young was associated with had a hierarchical membership rank structure, from the godfather (Jamel Jones) to a second leadership tier and then down through five levels of "star generals." (PSR ¶31) Mr. Young was an unranked non-member associate. Up until his arrest for this offense, at age 38, Mr. Young had no history of violence or gun possession, and his longest term of imprisonment was one year, when he was 15. Otherwise, his criminal convictions were for 5th degree misdemeanor possession of marijuana and 7th degree possession of a controlled substance.

(v)   Mr. Young was arrested on December 19, 2018. (PSR p. 1) He entered into plea negotiations early and on April 5, 2019, the government offered him an agreement to plead guilty to the racketeering conspiracy of Count One and admit to distributing narcotics and the attempted murder in January 2018 of a gang member known as "Snow." In exchange, the Government would move to dismiss Counts 2 (firearms offense–racketeering conspiracy), 16 (narcotics trafficking), and 17 (firearms offense–narcotics trafficking).

(vi)   The plea offer letter calculated that his sentencing range for the racketeering RICO offense (with reference to the offense levels for the narcotics and attempted murder)

was 360 months to life, driven by the high base offense level for fentanyl analogue. The statutory maximum sentence for the RICO count was 240 months, and so the statutory maximum was the guideline sentence. The parties would stipulate to the 240-month sentence and agree that they could not seek a below-guideline variance.

(vii)   On April 18, the government modified the original plea offer, removing the paragraph that barred the parties from seeking a below-guideline sentence and replacing it with a paragraph permitting the parties to seek a variance based upon § 3553(a) factors. Mr. Young signed the agreement and on April 19 he pled guilty before Judge Engelmayer.

(viii)  Almost five months after Mr. Young's guilty plea, but months before his sentencing, two of his co-defendants went to trial. At that time this Honorable Court began to sentence all of the petitioner's co-defendants. Eventually, Mr. Young learned that the godfather of the gang, Jamel Jones, received a 135-month sentence; the most violent among the gang's enforcers, Kifano Jordan, received a 188-month sentence; high-ranking member Roland Martin received 66 months; and the rest received sentences between 60 and 85 months.3 On December 2, the judge sentenced Mr. Young to 240 months, 52 months higher than the next highest sentence (Jordan's). [2]

---

[2] 09/06/2019   295   JUDGMENT as to Kifano Jordan (2), Count(s) 1, 10ss, 11ss, 12ss, 1s, 1ss, 2, 2s, 2ss, 3-4, 3s-4s, 3ss-4ss, 5, 5s, 5ss, 8, 8s, 8ss-9ss are All open counts are dismissed on the motion of the US; Pleaded guilty to Count(s) 1sss hundred twenty (120) months on count 2sss, theses terms to run consecutively. Supervised release for a term of Five years on each count, the terms to run concurrently.; Count(s) 2sss, Imprisonment for a total term of One hundred Eighty (180) Months; Sixty (60) months on count 1sss and one hundred twenty (120) months on count 2sss, theses terms to run consecutively. Supervised release for a term of Five years on each count, the terms to run concurrently. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be designated to a facility as close as possible to the New York City area to facilitate family visits. Special Assessment of $200 which is due immediately. (Signed by Judge Paul A. Engelmayer on 9/6/19)(jw) (Entered: 09/06/2019)

10/17/2019   358   JUDGMENT IN A CRIMINAL CASE as to Jamel Jones (1). THE DEFENDANT: pleaded guilty to counts 1ss & 16ss of the S6 Indictment. All open counts are dismissed on the motion of the United States. IMPRISONMENT: One hundred thirty-five (135) months on both counts, the terms to run concurrently. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be designated to FCI Fort Dix or FCI Otisville, or, failing those two facilities the Court recommends that the defendant be housed as close to the New York City area as possible. The Court also recommends that the defendant be placed in all drug treatment programs for which he is eligible. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Five (5) years; three (3) years on count 1ss and five (5) years on count 16ss, these terms to run concurrently. See ADDITIONAL SUPERVISED RELEASE TERMS. ASSESSMENT: $200.00

(ix)     Judge Engelmayer found at Co-Defendant Mack's sentencing proceeding to control

Mr. Young's sentencing.  First, Judge Engelmayer knew and advised government

counsel that facts proved at Mack's trial might affect co-defendants' sentences and so

must be brought to the attention of all defense counsel.  Specifically, at the sentencing

of Co-Defendant Jones on October 17, 2019, when discussing Cooperating Witness

Kristian Cruz's testimony during Mack's trial, regarding heroin and fentanyl, Judge

Engelmayer advised Government counsel Longyear as follows:


THE COURT: "One thought just for further sentencing... Just to avoid any delay during the proceeding, to
the extent that there are facts that were developed at trial that aren't in the presentence report, for future
defendants I'd ask you to identify for defense counsel the additional facts that you believe the Court should
be considering from the trial, and at the sentencing have a letter exchange with them.  Hopefully, you can
agree on the facts or isolate any disputes, and that way it will expedite the sort of colloquy that we're
having today."


(x)      At the petitioner's co-defendant's (Mack's)[3] hearing the Sentencing Court further

stated that the trial record did not support a specific quantity of fentanyl contained or

---

due immediately. (Signed by Judge Paul A. Engelmayer on 10/17/2019) (ap) Modified on 10/21/2019 (ap).
(Entered: 10/17/2019)

10/11/2019      337      JUDGMENT IN A CRIMINAL CASE as to Roland Martin (7). THE DEFENDANT: pleaded
guilty to count 1sss of the S9 Indictment. All open count is dismissed on the motion of the United States.
IMPRISONMENT: Sixty-six (66) months. The court makes the following recommendations to the Bureau of Prisons:
The Court recommends that the defendant be designated to FCI Fort Dix or, failing that, FCI Fairton, or failing those
two facilities, a facility as close to the New York City area to facilitate family visits. Ill The defendant is remanded to
the custody of the United States Marshal. SUPERVISED RELEASE: Three (3) years. See ADDITIONAL SUPERVISED
RELEASE TERMS. ASSESSMENT: $100.00 due immediately. (Signed by Judge Paul A. Engelmayer on 10/11/2019)
(ap) (Entered: 10/11/2019)

[3] "Second, the Court holds, with Mack, that the four-point fentanyl misrepresentation enhancement does not
apply. The government seeks this enhancement pursuant to Section 2D1.1(b)(13). . . .
Crucially here, by its terms, this amendment was effective as of November 1, 2018. . . .
Cruz also testified on direct examination that he began cooperating with the government "around May 2018."
Transcript at 871.  On redirect Cruz testified that after May 2018, he did not engage in any drug deals or have any
drug-related conversations with Mack.  See transcript at 1352. Indeed, while Mack never withdrew from the
narcotics conspiracy, the record is devoid of any evidence that Mack misrepresented a substance containing
fentanyl after May 2018, much less after the amendment's effective date of November 1, 2018.
The Court cannot comfortably, under these circumstances, find that a guidelines enhancement that only became
effective six months later applies.  Accordingly, the Court does not apply the four-level enhancement for fentanyl
misrepresentation. "

possessed by co-defendant Cruz to support a four-level enhancement in the narcotics conspiracy. [4]

## Relevant Law

(i)    (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. § 2255. Federal custody; remedies on motion attacking sentence, 28 USC § 2255.

(ii)    A motion pursuant to Section 2255 must be filed in the district court "which imposed the sentence" being challenged. 28 U.S.C. § 2255(a); Ndoromo v. Holder, No. 09–CV–5686, 2010 WL 346684, at *1, 2010 U.S. Dist. LEXIS 4631, at *2 (E.D.N.Y. Jan. 20, 2010).5 Further, Section 2255 "may not be used as a substitute for a direct appeal." Marone v. United States, 10 F.3d 65, 67 (2d Cir.1993) (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). "[A] claim

---

[4] "Having reviewed the trial record, the Court cannot reliably find [the quantity of fentanyl analogue], although it is certainly a possibility. . . . And while the record comfortably supports a finding that at least some of the mixtures and substances containing heroin that Mack possessed and distributed also contained fentanyl, it does not offer guidance to the Court as to the quantity of substances containing fentanyl that Cruz sold in connection with the [gang] Nine Trey narcotics conspiracy. . . . Accordingly, given the indeterminate record as to the quantity of fentanyl . . . the Court applies a base offense level keyed to [one kilo of] heroin sales of 30 under Section 2D1.1(c)(5).

"If your point is that Cruz had a drug dealing operation that's independent of the gang, sure, but I'm focusing really on what Cruz brought to the gang, which was clearly some drug dealing that included both heroin and, although the quantity is a little elusive, some fentanyl too."

'may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review.' " Mora v. United States, No. 08–CV–3826, 2010 WL 2607209, at *2, 2010 U.S. Dist. LEXIS 64838, at *4 (S.D.N.Y. June 29, 2010) (dismissing as procedurally barred petitioner's claims that, inter alia, his sentence was calculated incorrectly and his federal and state sentences should run concurrently because petitioner did not raise those claims on direct review) (quoting Zhang v. United States, 506 F.3d 162, 166 (2d Cir.2007)). An exception to this general rule is that "a petitioner may bring an ineffective assistance of counsel claim [in a motion pursuant to 28 U.S.C. § 2255] whether or not the petitioner could have raised the claim on direct appeal." Mui v. United States, 614 F.3d 50, 54 (2d Cir.2010) (citing Massaro v. United States, 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)). Martin v. U.S., 834 F.Supp.2d 115, 122 (E.D.N.Y.,2011).

(iii)   Counsel is ineffective when it fails to argue for a lower guidelines sentence than is applicable by law. Glover v. U.S. 531 US 198 (2001)[5]

## Counsel's Ineffectiveness

(a) Law

(i)   The standard for determining such claims under principles established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that his lawyers' representation was not within the range expected of attorneys in criminal cases, and that there was a reasonable probability that, but for counsels ' ineffectiveness, the result of the trial and appeal would have been different. Gee v. Conway, 664 F.Supp.2d 225, 226 (W.D.N.Y.,2009).

---

[5] The Supreme Court, Justice Kennedy, held that the increase in prison sentence from 6 to 21 months constituted prejudice required for establishing ineffective assistance, assuming that increase resulted from error in Sentencing Guidelines determination, abrogating Durrive v. United States and Martin v. United States. Glover v. U.S., 531 U.S. 198 (U.S.,2001)

(b) Cause

(ii)    In the instant case, trial counsel, Aaron Jonathan Mysliwiec, Miedel & Mysliwiec, LLP, 80 Broad Street, Suite 1900, New York, NY 10004, (212)-616-3046, Fax: (800)-507-8507, Email: am@fmamlaw.com; knew that the applicable guideline range involved 240 months and not 360months to Life.[6] However, trial counsel allowed the judge at sentencing to use a 4 level sentencing enhancement that went into effect 6 months after the defendant's conduct had been ceased:

> "Second, the Court holds, with Mack, that the four-point fentanyl misrepresentation enhancement does not apply. The government seeks this enhancement pursuant to Section 2D1.1(b)(13). . . . Crucially here, by its terms, this amendment was effective as of November 1, 2018. . . . Cruz also testified on direct examination that he began cooperating with the government "around May 2018." Transcript at 871.  On redirect Cruz testified that after May 2018, he did not engage in any drug deals or have any drug-related conversations with Mack.  See transcript at 1352. Indeed, while Mack never withdrew from the narcotics conspiracy, the record is devoid of any evidence that Mack misrepresented a substance containing fentanyl after May 2018, much less after the amendment's effective date of November 1, 2018. The Court cannot comfortably, under these circumstances, find that a guidelines enhancement that only became effective six months later applies.  Accordingly, the Court does not apply the four-level enhancement for fentanyl misrepresentation."

(iii)   Evident from the sentencing hearing of the petitioner's co-defendant Mack. Cruz who supplied the narcotics conspiracy and was referred to by the government as being the petitioner's partner[7], stopped selling drugs on or about May 2018, which was 6

---

[6] "The Parties agreed that the applicable stipulated Guidelines calculation for Mr. Young is 240 months' imprisonment."  See Plea Agreement at 1-5 (see Dkt # 366 page 3 or 6

[7] During the trial of Aljermiah Mack and Anthony Ellison, Kristian Cruz testified that the defendant was involved in all aspects of Cruz's narcotics trafficking, including packaging, selling, and transporting drugs. (Trial Tr. at 1132:22–25.) Indeed, Cruz characterized the defendant as Cruz's "partner." (Id. at 1342: 8–11.) Cruz estimated that he sold approximately 80 kilograms of mixtures and substances containing fentanyl and fentanyl analogue from in or about 2016 through 2017. (Id. at 862:10–16.) Cruz further testified that, although the mixtures contained fentanyl and fentanyl analogue, Cruz told people that the substance he was selling was heroin. The defendant The Silvio J. Mollo Building One Saint Andrew's Plaza New York, New York 10007 U.S. Department of Justice United States Attorney Southern District of New York Case 1:18-cr-00834-PAE Document 369 Filed 11/11/19 Page 1 of 4 Page 2 agreed that he, too, engaged in this conduct, which is accounted for by a four-point enhancement in the base offense level for knowingly misrepresenting that he was selling heroin. At certain times throughout the narcotics conspiracy, the defendant and Cruz were selling pure fentanyl mixed with cutting agents as heroin. (PSR ¶¶ 25(h),

months prior to the enactment of the 4-level drug enhancement used in the petitioner's case. Therefore, trial counsel allowed the Sentencing Court to use level 38 as a base offense level instead of level 32.

(iv)    In initially calculating the petitioner's range to determine if it was above or below the 20-year statutory maximum, both the PSR and the Government in its plea offer letter calculated the adjusted offense level to be 44. They keyed the base offense level to fentanyl analogue for a level 38 (U.S.S.G. § 2D1.1(c)(1)); they applied the 4-level enhancement for misrepresenting a substance containing fentanyl (§ 2D1.1(b)(13)); and a 2-level enhancement for gun possession connected to the narcotics conspiracy (§ 2D1.1(b)(1)). See PSR ¶¶82-88. Ironically, this is exactly the same set of calculations used for Mack, except for the quantity attributed.

Correctly calculating Mr. Young's range based on the Sentencing Court's heroin-fentanyl findings, the adjusted offense level for the narcotics is now 34: base offense level 32 for heroin, no enhancement for misrepresenting fentanyl, and the 2-level enhancement for gun possession connected to the narcotics conspiracy. Continuing on with the calculations, this adjusted offense level 34 for the RICO predicate narcotics conspiracy is grouped with the adjusted offense level of 35 for the predicate attempted murder. See PSR ¶81. When grouping, one unit is assigned to the group with the highest offense level (35), and one additional unit is assigned to any group that is 1 to 4 levels lower. Because the narcotics level 34 is one level lower, this second unit is added. Thus, here there are a total of two units, which means that two levels are added to the higher offense level to find the combined adjusted offense level: $35 + 2 = 37$. See U.S.S.G. § 3D1.4. Finally, on account of his timely accepting responsibility through his guilty plea, 3 levels are subtracted pursuant to U.S.S.G. § 3E1.1(a)&(b). See PSR ¶¶94-95. Thus, Mr. Young's total offense level is 34.

---

56.) As Cruz's partner, the defendant shared in orders, stored the drugs in apartments the defendant controlled, packaged the drugs, delivered the drugs, and picked up money. The defendant also possessed firearms in furtherance of the narcotics trafficking business. (Id. ¶ 56.)

(v)    Trial counsel, in the instant case, followed the trial of other co-defendants.[8] However, trial counsel failed to object to an enactment that boosted the petitioner's sentence above a base offense level that was not prescribed by law.

(c) Prejudice

(vi)   Likewise, the sentencing Court made it abundantly clear that it would sentence the defendant's in the instant case similarly and that this meant presumably below the applicable guideline range; as was evident in the petitioner's case.[9] Therefore, had counsel argued the proper applicable guideline range, in the instant case, the petitioner would have received a below the guidelines sentence; that being one below base offense level 38 and starting at level 32. See Supra at (b)(iv).

(vii)  The Supreme Court, Justice Kennedy, held that the increase in prison sentence from 6 to 21 months constituted prejudice required for establishing ineffective assistance, assuming that increase resulted from error in Sentencing Guidelines determination, abrogating *Durrive v. United States* and *Martin* v. *United States. Glover v. U.S.*, 531 U.S. 198 (U.S.,2001).

(viii) In the instant case, the petitioner was prejudiced by counsel's failure to argue the correct base offense level. Effective counsel would have known: 1) that the November 1 2018 enactment could not have included all of the petitioner's conduct

---

[8] " I would not suggest that the Court ignore Mr. Young's dangerous conduct. I do submit, however, that Mr. Young's conduct is not so different in kind from Jones' and Jordan's that he should be sentenced to 240 months' imprisonment, which would be a sentence 105 months more than Jones' and 60 months more than Jordan's. Both men were involved in very dangerous conduct where people could have been killed" See Dkt# 366 page 5

[9] when sentencing D. Butler, the court stated:   THE COURT: "All right. So, I appreciate that the government here, as in a number of other sentences, has recommended a guideline sentence.  As you know though in this case at least in a number of the sentences I've imposed a sentence below the guidelines.
To the extent that the guidelines are some form of a measuring stick here, doesn't that suggest that something below the guidelines might be in order to assure a proper calibration with defendants who got below-guideline sentences too? "
MR. LONGYEAR: "I wouldn't dispute the Court on that point."

12

given the timeline of the conspiracy; and 2) that other co-defendant's such as Kristian Cruz who on redirect testified that after May, 2018, he no longer sold drugs as part of the instant conspiracy. (See Mack's trial at page 1352). Therefore, leaving the evidence needed for a four-level enhancement outside the November 1st, 2018 enactment. Because trial counsel failed to argue that the four-level enhancement did not apply, in the instant case, the petitioner suffered a greater sentence than he would have received had counsel done so.

(ix)   Lastly, other Circuit Courts have held that counsel was ineffective for the same or similar conduct as counsel in the instant case. "At sentencing, the district court accepted the Guidelines range as calculated in the PSR and sentenced Curtis to fifty-seven months' imprisonment. Counsel's failure to object to the erroneous Guidelines range was objectively unreasonable, given the ease with *415 which counsel should have spotted the error. Further, there is a reasonable possibility that, had counsel objected to the erroneous Guidelines range, the district court would have sentenced Curtis at the low end of the proper Guidelines range, which was six months less than his current sentence. *U.S. v. Curtis*, 360 Fed.Appx. 413, 414–15, 2010 WL 55511, at *1 (4th Cir. (N.C.),2010). Therefore, counsel is ineffective in the instant case.

(x)   Closing Statement:  Petitioner Young argues that the facts of this case clearly support that his lawyer was ineffective during sentencing. 18 U.S.C. section 3553(a)(6) was intended to eliminate national disparity. Two of his co-defendants went to trial. Both were convicted and one, Aljermiah Mack, has since been sentenced. The jury convicted Mack of the same RICO conspiracy count to which Mr. Young pled guilty (Mack's underlying predicate acts were robbery and narcotics trafficking), as well as a count of substantive narcotics trafficking, which was virtually identical to Count 16 dismissed as to Mr. Young. (The Government had made Mack the same 20-year plea offer it made Mr. Young.)

Relevant Facts: Following the trial, the court began to sentence all the co-defendants. Eventually, Mr. Young learned that Jamel Jones, received a 135-month sentence; the most violent among the gang's enforcers, Kifano Mr. Young, received a 188-month sentence; high-ranking member Roland Martin received 66 months; and the rest received sentences between 60 and 85 months.

On December 2, the judge sentenced Mr. Young to 240 months, 52 months higher than the next highest sentence (Mr. Young's). Two and a half months after Mr. Young's sentencing, the court sentenced Aljermiah Mack. The PSR calculated Mack's guideline range at life, driven by the high offense level for the fentanyl analogue that he – like Mr. Young – was charged with distributing, and by Mack's criminal history category (CHC) at the highest level, VI. The government argued for a 360-month term of imprisonment. The Government believed Mack more culpable than Mr. Young, "given Mack's violence, drug dealing activity, and leadership role in the gang."

At sentencing, the court found that keying Mack's base offense level to fentanyl analogue was unsupported by the gang's narcotics-trafficking activities. The court rejected the PSR's calculations and re-calculated his guideline range based on heroin. It found that the appropriate resulting range was now 235-293 months, and then it varied downward to bring it in line with the other co-defendant's sentences, particularly the sentence of Co-Defendant Jones. The court sentenced Mack to a term of 204 month, the second highest sentence of all the coconspirators, but 36 months less than Mr. Young's sentence.  Sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But this does not mean that a sentence calculated under the Guidelines is unreasonable simply because it is harsher than a state-court sentence would be for a comparable crime. Federal and state authorities have concurrent jurisdiction over various offenses and may apply disparate punishments to similar conduct. Adjusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which

14

is what § 3553(a)(6) is designed to discourage. As the Fourth Circuit said in reversing a sentence that apparently considered state/federal sentencing disparities, "The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants.... The Guidelines [seek] to avoid only the unwarranted disparities that exist [ ] in the federal criminal justice system, that system for which the Guidelines are governing law." United States v. Clark, 434 F.3d 684, 687 (4th Cir.2006).

Section 3553(a)(6) is for the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". See United States v. Romero, 749 Fed. Appx. 31 (2nd Cir. 2018); and United States v. Newsome, 399 Fed. Appx. 31 (2nd Cir. 2010). Petitioner's more culpable codefendants Jamel Jones (sentenced to 135 months); and Kifano Jordan (sentenced to 188 months), creates a "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". Petitioner Young was sentenced to 240 months and was less culpable than the two codefendants named above. Under the facts and circumstances of Petitioner's should be re-sentenced to ensure that his sentence is not based on a clearly erroneous misunderstanding of the facts as it applies to the law.

Finally, when sentencing the codefendants this court noted: "that the four-point fentanyl enhancement was a misrepresentation which did not apply". Under section 2D1.1(b)(3). Because this law was enacted on November 1, 2018, its use, in this case would violate the ex post facto clause. Petitioner's lawyer failed to object to this matter. Thus, this court should also grant an evidentiary hearing so that Petitioner can support his claims.

AO 243 (Rev. 09/17)

# Motion to Vacate, Set Aside, or Correct a Sentence
# By a Person in Federal Custody

## (Motion Under 28 U.S.C. § 2255)

### Instructions

1. To use this form, you must be a person who is serving a sentence under a judgment against you in a federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

2. You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this motion.

6. If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

7. In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

8. When you have completed the form, send the original and ___1___ copies to the Clerk of the United States District Court at this address:

**Southern District of New York**
**500 Pearl Street**
**New York, N.Y. 10007**

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9. **CAUTION: You must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

**Second Chance 4 R.E.A.L.**
Tommy Walker
*Certified Paralegal*
Ph: (716) 348-9861
2ndChance4r.e.a.l@gmail.com
P.O. Box 514 • Buffalo, NY 14215-0514





U.S. POSTAGE PAID
BOB 19 ENV
BUFFALO, NY
14215
MAR 03 22
AMOUNT

**$2.16**
R2305M148577-01

1000        10007



Clerk of The Court
U.S. District Courthouse
Southern District of New York
500 Pearl Street
New York, N.Y. 10007



RECEIVED
MAR - 8 2022
PRO SE OFFICE



RECEIVED
MAR 07 2022
CLERK'S OFFICE
S.D.N.Y.

Pro Se Intake