

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 29, 2022

**BY ECF**
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *United States v. Aaron Young*, 18 Cr. 834 (PAE)**

Dear Judge Engelmayer:

The Government respectfully submits this letter brief in opposition to defendant Aaron Young's *pro se* motion under 28 U.S.C. § 2255 (ECF No. 99, the "Motion"). For the reasons explained below, the defendant's motion should be denied in its entirety.

## I. Background

### a. Offense Conduct

As set forth during his plea allocution and in the Presentence Investigation Report ("PSR"), the defendant was a member of the Nine Trey Gangsta Bloods ("Nine Trey") and sold at least nine kilograms of fentanyl analogue with other members of Nine Trey. (April 19, 2019 Plea Transcript ("Plea Tr.") at 21; PSR ¶ 56.) The defendant possessed firearms in furtherance of his drug trafficking. (PSR ¶ 56.) In addition, the defendant shot a fellow Nine Trey member in the head in order to increase his status within the gang. (Plea Tr. at 21; PSR ¶ 33.)

In addition to his own admissions during his guilty plea, and his adoption of the PSR, evidence of the defendant's crimes was also elicited at length during the trial of Aljermiah Mack and Anthony Ellison. For example, cooperating witness and fellow Nine Trey member Kristian Cruz testified testified that the defendant was involved in all aspects of Cruz's narcotics trafficking, including packaging, selling, and transporting drugs. (Trial Tr. at 1132:22–25.) Indeed, Cruz characterized the defendant as Cruz's "partner." (*Id.* at 1342: 8–11.) Cruz estimated that he sold approximately 80 kilograms of mixtures and substances containing fentanyl and fentanyl analogue from in or about 2016 through 2017. (*Id.* at 862:10–16.) Cruz further testified that, although the mixtures contained fentanyl and fentanyl analogue, Cruz told people that the substance he was selling was heroin. The defendant agreed that he, too, engaged in this conduct, which is accounted for by a four-point enhancement in the base offense level for knowingly misrepresenting that he was selling heroin. At certain times throughout the narcotics conspiracy, the defendant and Cruz were selling pure fentanyl mixed with cutting agents as

heroin. (PSR ¶¶ 25(h), 56.)

As Cruz's partner, the defendant shared in orders, stored the drugs in apartments the defendant controlled, packaged the drugs, delivered the drugs, and picked up money. The defendant also possessed firearms in furtherance of the narcotics trafficking business. (*Id.* ¶ 56.)

On January 19, 2018, the defendant and Cruz met with another Nine Trey member, known as "Snow," at a bar in Brooklyn. After Cruz left the bar, the defendant shot Snow in the back of the neck at nearly point-blank range. (*Id.* ¶ 33.) Miraculously, Snow survived the shooting. Later that evening, the defendant contacted Cruz and asked Cruz to take the defendant to Pennsylvania. (*Id.*) During the trip to Pennsylvania, the defendant admitted to Cruz that he "bodied" Snow – meaning that the defendant thought he had killed Snow. (*Id.*) Cruz testified at trial regarding the attempted murder of Snow, as well as the events that led up to the shooting of Snow. Cruz testified that, prior to the shooting of Snow, Cruz and Young heard a surreptitious recording of Snow in which Snow was talking about kidnapping Cruz and killing Jamel Jones. (Trial Tr. at 1136:12–17.) According to Cruz, Young told Cruz "that he [Young] had to shoot him [Snow]," *i.e.*, Young justified his shooting of Snow to Cruz because of the recording. (*Id.* at 1136:19.)

**b. Guilty Plea**

On April 19, 2019, the defendant appeared before the Court and pled guilty, pursuant to a plea agreement (the "Plea Agreement"), to Count One of the Indictment. In the Plea Agreement, the parties stipulated to the application of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), agreeing that the Stipulated Guidelines Sentence was 240 months' imprisonment.

Before accepting the defendant's guilty plea, the Court conducted a careful allocution that complied with Federal Rule of Criminal Procedure 11. The Court placed Young under oath and confirmed that Young was competent to plead guilty. (Plea Tr. at 5–7.) The defendant confirmed that he: (a) had reviewed the charges against him with his attorney; (b) had discussed the consequences of entering a guilty plea with his attorney; and (c) was satisfied with his attorney's representation. (*Id.* at 7.)

The Court ensured that the defendant understood that, prior to imposing sentence, the Court would calculate the Guidelines, and consider the Section 3553(a) factors as well as the Presentence Report. (*Id.* at 13–16.) Furthermore, the Court confirmed that even if the sentence imposed was more severe than the defendant expected, he would be bound by his guilty plea and would not be permitted to withdraw it. (*Id.* at 16.)

The Court reviewed the Plea Agreement with the defendant and confirmed that the defendant had signed it, had read it before he signed it, had discussed it with his lawyer before he signed it, and understood it. (*Id.* at 16–18.) The defendant confirmed that no one had made any promises (aside from the Plea Agreement) or threats to get him to plead guilty. (*Id.* at 16, 18, 20.)

The Court confirmed that there was a factual basis for the defendant's plea. (*Id.* at 21–24.) The defendant admitted that he was a member of Nine Trey; that he agreed with other members of the gang to sell fentanyl analogue; that he shot another Nine Trey member in the head with the intent to kill him and in order to increase his position within the gang; and that some of the drugs were sold in Manhattan. (*Id.* at 21–23.)

The Court accepted the plea, finding that the defendant understood the charge against him and consequences of the plea, that the plea was voluntarily made, and that the plea was supported by a sufficient factual basis. (*Id.* at 25.)

**c. Sentencing**

On December 2, 2019, the Court sentenced the defendant to a term of imprisonment of 240 months. (December 2, 2019 Sentencing Transcript ("Sentencing Tr.") at 31.)

Prior to imposing sentence, the Court confirmed that both parties read the PSR, that the defendant discussed the PSR with his counsel, and that neither party had any objections to the factual accuracy of the PSR. (*Id.* at 3–4.) The Court determined that the applicable Guidelines range was 240 months, due to the statutory maximum of 20 years' imprisonment on Count One. (*Id.* at 5–6.)

In imposing sentence, the Court noted the incredibly serious nature of the defendant's offense – specifically, that the defendant shot "Snow" at point blank range and thought that he had killed "Snow." (*Id.* at 21–22.) The Court further noted that the defendant sold "a prodigious amount of dangerous drugs for the gang" and knew that the drugs were fentanyl or fentanyl analogues. (*Id.* at 23.) Moreover, the Court noted that the defendant possessed firearms while dealing drugs, which made the conduct worse. (*Id.* at 24.) Finally, the Court noted that given the defendant's age when he committed his crime and his "significant" criminal history, a substantial sentence was necessary. (*Id.* at 25–26.)

Ultimately, the Court sentenced the defendant to 240 months, which was driven in large apart due to the "gravity of [the defendant's] crime, *particularly the near murder* . . . ." (*Id.* at 30 (emphasis added).)

**d. Appeal**

On December 9, 2019, the defendant appealed his conviction on the following grounds: (1) the sentence was procedurally unreasonable because the Court applied the base offense level of fentanyl analogue instead of heroin and included the four-point misbranding enhancement; (2) the sentence was procedurally unreasonable because the Court used the incorrect benchmark

when considering and applying the Section 3553(a) factors; and (3) the sentence was greater than necessary when considering the Section 3553(a) factors.

On January 15, 2021, the Court of Appeals dismissed the defendant's appeal because the defendant had not demonstrated that the appeal waiver in the Plea Agreement was unenforceable.

**e. Section 2255 Motion**

On March 7, 2022, the Motion was docketed. The defendant claims that his counsel was ineffective because counsel did not argue for a lower base offense level with respect to the narcotics guidelines and failed to argue that the four-point misbranding enhancement should not apply. (Motion at 9–11.) The defendant requests that he be resentenced pursuant to a reduced Guidelines range. (Motion at 15.)

## II. Applicable Law

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence because "the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

A claim of ineffective assistance of counsel, however, is a permissible basis for bringing a § 2255 petition. The Sixth Amendment affords a defendant in criminal proceedings the right "to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). A court is to start from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because there are many different ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689–90; *see id.* at 689 ("Judicial

scrutiny of counsel's performance must be highly deferential."); *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

With respect to *Strickland*'s second prong, a petitioner who has pled guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition, a petitioner may show prejudice by showing that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 566 U.S. 134, 147–48 (2012); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (finding prejudice where defendant showed that, but for counsel's deficient performance, there was a reasonable probability that defendant and the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). In the plea-bargaining context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). Thus, for a petitioner filing a motion under § 2255 to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

## III. Discussion

The Motion should be denied without a hearing because the defendant received effective assistance of counsel, and the defendant does not claim that he would not have pleaded guilty but for counsel's errors.

The S6 18 Cr. 834 Indictment charged the defendant in four counts: racketeering conspiracy; discharging a firearm in furtherance of the racketeering conspiracy; narcotics conspiracy; and possessing a firearm in furtherance of the narcotics conspiracy. While the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) required the dismissal of the firearms count in furtherance of the racketeering conspiracy, the defendant otherwise faced a mandatory minimum term of imprisonment of 15 years and a maximum sentence of life imprisonment. The defendant's counsel negotiated a plea agreement in which the defendant faced a maximum of twenty years' imprisonment and was able to argue for a sentence below the Guidelines range. This alone was no small feat. The seriousness of the defendant's crimes – selling kilograms of fentanyl and fentanyl analogue, masked as heroin to the unsuspecting end-user, and attempting to murder a fellow gang member by shooting him point-blank in the head, simply to improve the defendant's own status in Nine Trey – cannot be overstated. That the defendant's counsel was able to negotiate a resolution which capped the defendant's sentencing exposure at 20 years, despite the overwhelming evidence against the defendant – which, as established at Mack's and Ellison's trial, included eyewitness and law

enforcement testimony and forensic and laboratory evidence – makes clear that the defendant benefited tremendously by the representation he received.

Moreover, the parties stipulated to the Guidelines range in the Plea Agreement. During the change of plea conference, the Court asked the defendant whether he reviewed the Plea Agreement, whether he discussed it with his attorney, and whether he understood it – and the defendant acknowledged that he had. (Plea Tr. at 16–18.) Similarly, during the sentencing hearing, the defendant acknowledged that he read the PSR and did not object to any of the facts set forth in the PSR. (Sentencing Tr. at 3–4.) Relevant here, paragraphs 33 and 56 of the PSR provide the factual basis for the base offense level and enhancements about which the defendant now complains.

Thus, because (1) the defendant himself stated under oath that he understood and agreed with the terms of the Plea Agreement, (2) the defendant himself did not object to the factual recitations in the PSR, (3) the defendant stated during the change of plea hearing that he was satisfied with his attorney, and (4) the defendant's counsel negotiated a Plea Agreement that dramatically reduced the defendant's sentencing exposure, the defendant cannot meet the first prong of the *Strickland* test.

Regardless, even assuming the defendant could satisfy the first prong (and he cannot), the defendant cannot meet the prejudice prong because he does not claim that he would not have pled guilty absent his counsel's alleged errors. *See Hill* 474 U.S. at 59 ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); *see also Guzman v. United States*, 363 F. Supp. 3d 396, 401 (S.D.N.Y. 2019) ("Guzman does not and cannot demonstrate that a plea offer that included a Guidelines calculation of lower drug quantities would have been available to him, and in any event, nowhere states that he was prepared to contest the charge in the Indictment at trial.").

**IV. Conclusion**

Accordingly, because the defendant cannot show either that his counsel's performance was deficient, or that the deficiency prejudiced him, *see Strickland*, 466 U.S. at 687, his Motion should be denied

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

by: /s Michael D. Longyear
Michael D. Longyear
Jonathan E. Rebold
Jacob Warren
Assistant United States Attorneys
(212) 637-2223

cc: Aaron Young (By U.S. Mail)
Register Number 86428-054
Hazelton FCI
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525