UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

AARON YOUNG,

Defendant.

18 Cr. 834-8 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In April 2019, Aaron Young pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). That charge arose from Young's participation, as a member of the Nine Trey Gangsta Bloods gang ("Nine Trey"), in drug distribution and violence. Young admitted in his plea allocution to conspiring to distribute at least nine kilograms of fentanyl analogue, which Young and his co-conspirators had misrepresented to be heroin, and shooting in the back of the neck, at near pointblank range, a rival Nine Trey member known as "Snow." Dkt. 177 ("Plea Tr.") at 21–22; Dkt. 293 ("PSR") ¶ 33. In December 2019, the Court sentenced Young to the statutory maximum of 240 months' imprisonment, followed by three years of supervised release. Dkt. 403 ("Sent. Tr.") at 5–6, 31. In March 2021, the Second Circuit dismissed Young's direct appeal pursuant to an appeal waiver in his plea agreement. Dkt. 595. Young now petitions, *pro se*, to vacate his sentence under 28 U.S.C. § 2255. Dkt. 627 ("Pet."). He argues that his counsel was ineffective in failing to challenge two Guideline calculations or object to a sentence that was higher than those imposed on codefendants who had gone to trial. *Id.* at 10–15.

For the reasons that follow, the Court denies Young's petition.

## I. Background

### A. Criminal Conduct

From about 2013 to 2018, Young, a member of Nine Trey, participated in the "highly destructive conduct" of distributing—packaging, selling, and transporting—at least nine kilograms of fentanyl analogue with fellow Nine Trey member Kristian Cruz. Sent. Tr. at 23. Young and Cruz misrepresented to purchasers that those substances were heroin, a less lethal drug. *Id.* at 24. Young possessed a firearm in connection with, and in furtherance of, the narcotics conspiracy. PSR ¶ 56.

On January 19, 2018, Young committed an attempted murder. With premeditation and at nearly pointblank range, he shot a man known as "Snow" in the back of the neck. *Id.* ¶ 61; Sent. Tr. at 21. Young did so to retaliate against Snow, a rival within the gang, and to "enhance [Young's] role in the Nine Trey organization." Plea Tr. at 22. Snow had threatened to kill or kidnap Cruz and Jamel Jones, who held the post of "godfather" within Nine Trey. Sent. Tr. at 22. Miraculously, Snow survived. PSR ¶ 33. Unaware of Snow's survival, Young boasted to his fellow gang members shortly after the shooting that he had "bodied"—*i.e.*, killed—Snow. Sent. Tr. at 21; PSR ¶ 33.

### B. Indictment and Plea

In January 2019, Young was indicted on charges of racketeering conspiracy, narcotics trafficking, and possession and use of a firearm in furtherance of those offenses. *See* Dkt. 91.

On April 19, 2019, Young pled guilty, pursuant to a plea agreement, to the racketeering conspiracy count. 18 U.S.C. § 1962(d). At his plea hearing, he admitted to selling fentanyl analogue with other Nine Trey members, and to shooting Snow in the head with intent to kill. Plea Tr. at 21. At the plea hearing, Young confirmed that he understood the maximum penalty for his racketeering conspiracy offense was 20 years' imprisonment. He also acknowledged that

2

the Government and the defense, in the plea agreement, had calculated the Guidelines, capped by the statutory maximum, to recommend 240 months' imprisonment, *id.* at 12, and that, had it not been for the agreement negotiated by his counsel, the applicable Guidelines range would have been 360 months' to life imprisonment, *see id.* at 19 (Government counsel setting forth the Guidelines range absent the statutory maximum), 20 (Young confirming that he understood Government counsel's explanation). Young also acknowledged that: (1) the parties' Guidelines' recommendation did not bind the Court, *id.* at 14; (2) the Court retained discretion in imposing sentence, although it could not impose a sentence above the statutory maximum, *id.* at 15; (3) "if [his] attorney or anyone else has attempted to predict what [his] sentence [would] be, their prediction [c]ould be wrong," *id.*; (4) he was giving up his right to appeal or otherwise challenge his sentence, so long as the sentence did not exceed 240 months' imprisonment, *id.* at 20; and (5) he had discussed the plea agreement with his counsel, *id.* at 17. Young also testified that he had never been treated for any mental illness. *Id.* at 6. The Court found, after a colloquy with Young, his counsel, and counsel for the Government, that Young was competent to enter a plea of guilty at that time. *Id.* at 7.

### C. Sentencing

On December 30, 2019, the Court sentenced Young. In accord with the parties, the Court found the applicable Guidelines recommendation to be capped by the statutory maximum at 240 months' imprisonment. Sent. Tr. at 7, 30. The Court found that, given the seriousness of Young's offense, a 240-month sentence was necessary to achieve the sentencing goals set out in 18 U.S.C. § 3553(a). *See id.* at 30 ("The gravity of your crime, particularly the near murder and the need to protect the public and also achieve deterrence all point, in my judgment, to a sentence of 20 years. The lower sentence . . . would not capture the heart of the crimes you committed, particularly the attempted murder[,] or sufficiently respect the 3553(a) factors taken in

combination."); *see also id.* at 23 (finding significant the "prodigious amount" of fentanyl and fentanyl analogue that Young conspired to distribute), 25–26 (noting Young's substantial criminal history), 26 (noting Young's relatively advanced age as of the time of the racketeering conspiracy). The Court discussed the § 3553(a) factors at length, including mitigating factors, which included childhood abuse and Young's positive impact on the lives of his daughter and his girlfriend. *See id.* at 28–29. The Court also compared Young's criminal conduct to that of two codefendants who had pled guilty—Jamel Jones and Kifano Jordan—and who had received sentences below 20 years, but found Young's to warrant a much higher sentence because "[a]s destructive as their conduct was, none of them put a gun to the back of someone's head and fired a bullet intending to kill [someone]." *Id.* at 29. The Court imposed a sentence of 240 months' imprisonment, to be followed by three years' supervised release. *Id.* at 31.

### D.   Young's Appeal and § 2255 Petition

On December 9, 2019, Young, *pro se*, appealed. Dkt. 383. He argued that the Court's sentence was procedurally and substantively unreasonable. As to the former, he argued that the Court had wrongly applied the base offense level of fentanyl analogue instead of heroin, found a four-point misbranding enhancement applicable, and thus used a wrong Guidelines benchmark in its § 3553(a) analysis. As to the latter, he argued that, insofar as he read the Guidelines to call for a lower sentence, the Court erred substantively by failing to explain its imposition of an above-Guidelines sentence. *See* Dkt. 630 at 3–4. On March 29, 2021, the Second Circuit dismissed the appeal on the basis of the appeal waiver in Young's plea agreement, holding that Young had not demonstrated that that waiver was unenforceable. Dkt. 595 (citing *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).

On March 7, 2022, Young, again *pro se*, filed the instant petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, recasting his challenges to his sentence as claims of

ineffective assistance of counsel. On March 29, 2022, the Government filed an opposition. Dkt. 630. On April 13, 2022, Young filed a reply. Dkt. 633.

## II. Applicable Legal Standards

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct a sentence "imposed in violation of the Constitution or laws of the United States" or "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

A claim of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The Sixth Amendment gives a criminal defendant the right to effective assistance from his attorney at all critical stages in the proceedings. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).[1] A defendant so claiming must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

---

[1] The plea agreement excludes claims of ineffective assistance from its appellate waiver. For that reason, Young's § 2255 petition, in casting his challenge to his sentence as a product of ineffective assistance, is not barred by that waiver.

5

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). Thus, for a petitioner filing a motion under § 2255 to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

## III. Discussion

Young makes two arguments why his counsel was ineffective at the sentencing phase. First, Young argues that his counsel failed to argue that the four-point enhancement under the Guidelines for misrepresenting fentanyl as heroin was inapplicable to Young. He argues that Cruz, the supplier of the narcotics, had ceased selling drugs in or about May 2018, whereas the enhancement provision was not added to the Guidelines until November 1, 2018. Pet. at 10, 13. Relatedly, Young argues that his counsel erred in failing to argue that his baseline offense level should have been set by identifying heroin, not fentanyl or fentanyl analogue, as the drug that was distributed. *Id.* at 11. Second, Young argues his counsel was ineffective in failing to object to a sentence that was 36 months above the 204-month sentence the Court imposed on Aljermiah Mack, a co-conspirator involved in the gang's narcotics operations who went to trial. *Id.* at 14; *see also id.* at 12 & n.9 (discussing the Court's imposition of below-Guidelines sentences for several co-defendants).

The Court first applies *Strickland*'s reasonableness prong and then assesses prejudice.

### A. Reasonableness of Counsel's Representation

In applying *Strickland*'s first prong, a court must "consider particular claimed defects in the broader context of 'counsel's performance as a whole.'" *Jones v. Smith*, No. 09 Civ. 6497

6

(PAE) (GAY), 2012 WL 1592190, at *5 (S.D.N.Y. May 7, 2021) (citation omitted). That evaluation must be based on the facts known at the time, "not [on] hindsight to second-guess [counsel's] strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Courts therefore start from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Reasonable professional assistance is an "objective standard," evaluated "under prevailing professional norms." *Id.* at 688. There are many ways to effectively represent a criminal defendant, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689–90. And "[a] defendant's Sixth Amendment rights do not . . . guarantee 'error free' representation." *Jones*, 2012 WL 1592190, at *5. Rather, to establish that counsel's performance was deficient "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Rivas v. Fischer*, 780 F.3d 529, 546–47 (2d Cir. 2015). As such, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547.

Young's claims of ineffectiveness based on the Guidelines calculation fail for two reasons.

First, Young's proposed recalculation rests on a false factual premise: that he sold heroin instead of fentanyl or fentanyl analogue. *See* Pet. at 11. At his plea hearing, however, Young admitted under oath that he had conspired to distribute at least nine kilograms of fentanyl analogue. Young cannot now take that admission back. "Allegations a defendant makes in a § 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given the presumptive force of truth.'" *United States v. Geraldo*, 11 Cr. 1032-68 (PAE), 2021 WL 230282, at *5 (S.D.N.Y. Jan. 21, 2021) (citing *Francisco v. United States*, 115

7

F. Supp. 3d 416, 420 (S.D.N.Y. 2015)) (further citation omitted). Young also cannot take back his related factual concession at sentencing that he had conspired, as a member of Nine Trey, to mask these drugs as heroin, and the conspiracy among the gang to do so had existed during the period after the misrepresentation enhancement was effective. The PSR—consistent with the parties' plea agreement—set out such facts, and at sentencing, Young admitted that he had read the PSR, discussed it with his counsel, and did not have any objections to the facts it set forth. *See* Sent. Tr. at 3–4; PSR ¶¶ 33, 56, 61. *See Geraldo*, 2021 WL 230282, at *5 (declining to credit defendant's factual allegations in § 2255 petition where defendant, during guilty plea, had allocuted to understanding the maximum sentence of his crime of conviction, that the sentencing court retained discretion to impose that maximum sentence); *United States v. Sam*, No. 13 Cr. 14-4, 2016 WL 8540860, at *9 (D. Vt. Dec. 8, 2016) (declining to credit defendant's factual allegations in § 2255 petition where defendant, during plea allocution, "stated that he understood the Sentencing Guidelines and that he had a chance to go over them with [his counsel]"); *Tyson v. United States*, No. 12 Civ. 4993 (ADS), 2017 WL 394499, at *5 (E.D.N.Y. Jan. 27, 2017) ("Even if [§ 2255 petitioner's allegations challenging sufficiency of the evidence for weapon enhancement] were true, the Petitioner's trial counsel did not act deficiently because the Petitioner signed a plea agreement, which included the weapon enhancement."); *Robinson v. United States*, Nos. 21 Civ. 786, 18 Cr. 373 (RJS), 2021 WL 568171, at *5 (S.D.N.Y. Feb. 16, 2021) ("The representations of the defendant[ and] his lawyer, . . . as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceeding[] since solemn declarations in open court carry a strong presumption of veracity." (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Second, Young's beefs with his counsel's failure to oppose these components of the Guidelines calculations blink the broader context in which the plea agreement was negotiated. This context underscores the effectiveness of counsel's work. Young was indicted for four federal felonies—the racketeering conspiracy to which he pled guilty, a narcotics conspiracy offense carrying a mandatory minimum sentence of 10 years imprisonment, and two separate firearms offenses carrying mandatory consecutive sentences. Had Young proceeded to trial and been convicted of these offenses, he stood potentially to be sentenced to an actual or effective sentence of life imprisonment. And given the attempted murder of Snow, Young faced the very real prospect of a prison sentence well above 20 years if permitted by the statute(s) of conviction. The plea agreement, however, capped Young's sentence at 20 years. *See* Plea Tr. at 19. That in turn, capped the applicable Guidelines range at 240 months' imprisonment, whereas, as the PSR calculated and the parties' agreed, the conduct underlying Young's racketeering conviction otherwise would have resulted in a Guidelines range of between 360 months and life imprisonment. *See* PSR ¶ 25(n) ("Based upon the calculations set forth above, the defendant's Sentencing Guidelines range is 360 [months] to life imprisonment. However, as the statutory maximum for Count 1 is 240 months' imprisonment, the Guideline range becomes 240 months' imprisonment."); Sent. Tr. at 5. Young's counsel's advocacy in achieving the plea agreement thus dramatically limited Young's exposure.[2] This achievement was consequential, as was underscored at sentencing. There, the Court emphasized that, in light of the egregiousness of

---

[2] The plea also eliminated all of the counts on which Young faced mandatory minimum and consecutive sentences, enabling counsel to argue that the § 3553(a) factors favored a sentence well below 20 years' imprisonment. Although unsuccessful, counsel ably pursued such a sentence, both in his written and oral sentencing advocacy. *See* Dkt. 366 at 1–5 (discussing Young's difficult personal background, cognitive limitations, positive impact on others, and remorse); Sent. Tr. at 13–19 (same).

9

Young's crimes in connection with Nine Trey and especially his attempted murder of Snow, a sentence at the statutory maximum of 20 years' imprisonment was necessary to respect the § 3553(a) factors, viewed in combination. Sent. Tr. at 30.

In these circumstances, Young's claim that his counsel's performance in negotiating a plea that contained the Guideline stipulations which he now wishes to repudiate fell, overall, below a minimum standard of reasonableness cannot be taken seriously. *See, e.g., Albanese v. United States*, 415 F. Supp. 2d 244, 250 (S.D.N.Y. 2005) ("The Second Circuit has repeatedly rejected ineffective assistance claims where, as here, the petitioner in retrospect finds fault with the plea negotiated by counsel." (collecting cases)); *Khawar v. United States*, No. 15 Civ. 5784, 10 Cr. 1082 (TPG), 2016 WL 6270732, at *4 (S.D.N.Y. Oct. 26, 2016) (rejecting § 2255 motion based on ineffective assistance on the ground that petitioner retrospectively faulted the plea agreement negotiated by his counsel, and stating that defendant "was aware of his sentencing exposure upon pleading guilty"); *Geraldo*, 2021 WL 230282, at *5 (same). And Young was aware of all the relevant features of his plea agreement at the time he entered it. He acknowledged that the plea capped his sentence at 20 years imprisonment. Plea Tr. at 12. He acknowledged, too, that he had reviewed, discussed with his attorney, and understood the plea agreement, whose tabulation of the Guidelines matched that ultimately calculated in the PSR. *See* Plea Tr. at 19 (Court finding, without objection, that "the overall offense level for Count One is 41"); PSR ¶¶ 25, 74–96; *id.* ¶ 96 (listing total offense level of 41); Sent. Tr. at 3–5; *id.* at 5 (Court finding, without objection that "[t]he calculation in the presentence report is in accord with that agreement to the extent that it finds a total offense level of 41").

A final gauge of counsel's effectiveness in negotiating the plea agreement is supplied by tabulating the Guidelines as if not subject to a statutory cap and without stipulations as to how

10

the Guidelines applied. Assuming that Young had pled guilty without such stipulations, his offense level would have been set by the interplay of the offense levels for his two groups of criminal conduct. The group regarding Snow's attempted murder had an undisputed offense level of 35. PSR ¶¶ 25(e), 81, 89. And the group regarding the fentanyl racketeering conspiracy—even crediting Young's disputed claim that the 4-level misrepresentation enhancement was misapplied—would have had an offense level of 40. *See id.* ¶¶ 25(i), 88–90 (listing offense level of 44 for the fentanyl racketeering conspiracy). Under the rules applicable to multiple counts, the resulting combined offense level would have been 37. *See* U.S.S.G. § 3D1.4; *cf.* PSR ¶ 96 (listing total offense level of 41, three below the higher level of 44). Crediting Young with three points for acceptance of responsibility, his guidelines range, given his criminal history level (III), would have been between 292 and 365 months' imprisonment. This was well in excess of the 240-month calculation that his counsel achieved by dint of limiting his plea to Count One only. *See King v. United States*, No. 10 Cr. 122 (JGK), 2017 WL 1483337, at *16 (S.D.N.Y. Apr. 25, 2017) ("The advice to plead guilty represented a strategic choice to reduce the petitioner's potential exposure in light of the copious amount of evidence against her to a maximum of 96 months' imprisonment, which was in fact less than the Sentencing Guidelines would have provided had it not been for the statutory maximum limiting the sentence."); *see also Nicholson v. United States*, No. 09 Cr. 414 (RJS), 2014 WL 4693615, at *9 (S.D.N.Y. Sept. 22, 2014) (finding counsel's advice to enter plea agreement reasonable under *Strickland* where court later entered statutory maximum sentence, but petitioner avoided higher exposure from dismissed counts), *aff'd*, 638 F. App'x 40 (2d Cir. 2016) (summary order); *Geraldo*, 2021 WL 230282, at *4–5 (same, where court later imposed an above-Guidelines sentence of 320 months' imprisonment, but below the statutory maximum of life). Young

therefore has not rebutted—or come close to rebutting—the strong presumption that his counsel's performance fell "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Young's separate argument that his counsel's performance was ineffective because co-defendant Mack later received a lower (17-year) sentence, fails for two independent reasons. To begin, Mack's eventual sentence—imposed on February 24, 2020, *see* 18 Cr. 834-12 (PAE), Dkt. 431—could not have been known to Young or his counsel at the time of Young's sentencing on December 30, 2019, *see* Sent. Tr. at 1. Taking issue with a codefendant's lower sentence imposed *after* his own sentencing is a paradigmatic example of impermissibly "us[ing] hindsight to second-guess [counsel's] strategy choices." *Mayo*, 13 F.3d at 533. That he received a higher sentence than Mack does not suggest—at all—that Young's "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

To the contrary, Young's conduct warranted—indeed, required—a sentence higher than Mack's. Although both men participated actively in the gang's sales of fentanyl, Young, unlike Mack, participated in a shocking attempted murder. At Young's sentencing, the Court, in fact, distinguished Young's case on that ground from those of his already-sentenced co-conspirators Jones and Jordan, to whom his counsel had likened Young.[3] To the extent that Young relies on the fact that the Court, at Mack's sentencing, did not impose the misrepresentation adjustment, the facts of Mack's case were distinct. At Mack's sentencing, the Court concluded that "while Mack never withdrew from the narcotics conspiracy, the record is devoid of any evidence that

---

[3] *See* Sent. Tr. at 15–19; *see also id.* at 29 ("As destructive as their conduct was, none of them put a gun to the back of someone's head and fired a bullet intending to kill them. That shocking act taken by you in middle age, differentiates you from all the other defendants whom I've thus far sentenced.").

Mack misrepresented a substance containing fentanyl . . . after the amendment's effective date of November 1, 2018." Pet. at 10 (quoting Dkt. 470 (Mack Sentencing Transcript) at 16). Young, by contrast, stipulated in his plea agreement that the enhancement applied to his conduct.

Accordingly, the Court finds that Young has failed to establish that his counsel's assistance was deficient at all, let alone that it fell below outside the wide range of reasonable advocacy.

### B. Prejudice

As to *Strickland*'s second prong, a petitioner who has pled guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A petitioner alternatively may show prejudice by showing that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 566 U.S. 134, 147–48 (2012); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (finding prejudice where defendant showed that, but for counsel's deficient performance, there was a reasonable probability that defendant and the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). In other words, a defendant claiming ineffective assistance in the plea-bargaining context must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

Young cannot show any such thing. His sole basis for claiming prejudice is that he "was prejudiced by counsel's failure to argue the correct base offense level." He does not claim that, but for counsel's errors, he would have gone to trial. And to the extent that his claim is that he otherwise would have sentenced following his guilty plea to a lower sentence than the 20-year sentence imposed, that is demonstrably incorrect, as the transcript of his sentencing makes conclusively clear. Young therefore falls short of showing "a reasonable probability that, but for

13

counsel's [asserted] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## CONCLUSION

For the foregoing reasons, the Court denies Young's petition to vacate his sentence pursuant to 28 U.S.C. § 2255. Dkt. 627. The Court declines to issue a certificate of appealability. Young has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to close the case 22 Civ. 1958 and the motion pending at 18 Cr. 834-8, Dkt. 627, and to mail a copy of this order to Young.

SO ORDERED.

Paul A. Engelmayer
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 24, 2022
New York, New York