**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 21, 2022

**BY ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    **United States** v. **Aaron Young**, 18 Cr. 834 (PAE)

Dear Judge Engelmayer:

The Government writes in response to defendant Aaron Young's motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Young was a violent member of the Nine Trey Gangsta Bloods ("Nine Trey") – who most notably attempted to murder a fellow Nine Trey member by shooting him at point-blank range in the back of the neck – and trafficked dozens of kilograms of fentanyl, masked as heroin. In 2019, this Court sentenced Young to a sentence of 240 months' imprisonment; as such, Young has hardly served four years of his twenty-year sentence. Young is serving his sentence at the Federal Correctional Institution Hazelton ("FCI Hazelton") with an anticipated release date of February 26, 2036. Young has moved for compassionate release, primarily based on his health conditions (taken in the context of the COVID-19 pandemic) and his belief that the Court should have calculated a lower sentencing guidelines range for Young's narcotics conduct, and imposed a correspondingly lower sentence, in light of the subsequent sentencing of codefendant Aljermiah Mack, a/k/a "Nuke." Because the defendant has filed a notice of appeal with the Second Circuit, he has stripped this Court of jurisdiction to grant the instant application. However, the Court does have, and should avail itself of, the authority to *deny* Young's motion, both because he has failed to carry the high burden of showing extraordinary and compelling circumstances to justify early release, and because the § 3553(a) factors that justified his original sentence continue to justify that sentence. Accordingly, the motion should be denied.

## I.    Background

### A.    Offense Conduct

This Court presided over Young's guilty plea and sentencing and those of Young's twelve codefendants. It also presided over the three-week trial of codefendants Mack and Anthony Ellison, a/k/a "Harv." As such, the Government assumes the Court's familiarity with this case. In summary, Young was a member of Nine Trey, a longstanding and internationally known set of the violent Bloods street gang. (PSR ¶¶ 31, 61). Young served Nine Trey in two critical roles. First,

Young was an enforcer for the gang.  Most notably, on January 19, 2018, as part of an intra-gang dispute, Young shot a fellow Nine Trey member, known as "Snow," in the back of the neck at nearly point-blank range, and left him to die on a Brooklyn street.  (PSR ¶ 33).  Miraculously, Snow survived the shooting.  Second, Young and coconspirator-turned-cooperator Kristian Cruz were partners in a largescale drug operation which, per Cruz, distributed approximately 80 kilograms of fentanyl and fentanyl analogue, masked as heroin.  (PSR ¶ 56).  The two also possessed firearms in furtherance of that conspiracy.

## B.  Procedural History

Young was arrested on December 19, 2018, and has been detained ever since.  The Indictment charged Young in four counts, including racketeering conspiracy, narcotics trafficking, and firearms use.  On April 19, 2019, Young pleaded guilty to racketeering conspiracy as charged in Count One of the Indictment.  The stipulated guidelines contemplated both the above-described attempted murder, which yielded an offense level of 35, and the drug conspiracy conduct, which yielded an offense level of 44, because the offense both involved over 9 kilograms of fentanyl analogue – which was knowingly misrepresented as another substance (*i.e.*, heroin) – and the possession of a firearm.  Accounting for grouping and Young's acceptance of responsibility, the stipulated Offense Level was 41, and the stipulated Criminal History Category was II, yielding a Stipulated Guidelines Range of 360 months-to-life, which was then reduced to 240 months' imprisonment because of the 20 year maximum sentence for racketeering conspiracy.  Probation and the Court agreed with the parties' stipulated Offense Level calculation, but determined that Young was in Criminal History Category III, which functionally resulted in the identical Guidelines range as that contemplated by the plea agreement.

Both the Government and Probation recommended a Guidelines Sentence of 240 months' imprisonment.  The Government cited Young's troubling drug partnership with Cruz, in which, as established by Cruz's trial testimony, the two sold over 80 kilograms of mixtures and substances containing the lethal substances of fentanyl and analogues of fentanyl, that was masked as heroin and protected with firearms.  But the Government noted that "most troubling – and most deserving of a significant term of incarceration – was the January 19, 2018 attempted murder, in which the defendant shot another member of Nine Trey in the back of the neck at almost point-blank range. . . . [T]his was a premeditated shooting, and given the close range at which the defendant shot the victim, it was a miracle that the victim did not die."  (Dkt. 369 at 3).  Probation similarly cited Young's charged conduct, as well as his lengthy criminal history, which dated back to 1996, and included a robbery conviction.  (PSR at 30-31).

On December 2, 2019, this Court sentenced Young to 240 months' imprisonment.  By the time of that sentencing, the Court had presided over the trial of codefendants Aljermiah Mack and Anthony Ellison, and had heard extensive testimony about Cruz's drug partnership with Young, including: how the two worked hand-in-hand to purchase large quantities of fentanyl and fentanyl analogue from China; how those drugs were stored, alongside firearms, in premises controlled by Young; how the two mixed these substances with cutting agents, and at times, heroin, and sold the finished product to buyers under the misrepresentation that the product only contained heroin.  The Court had also heard testimony about how Young lured Snow to a

Page 3

Brooklyn bar, and then down an empty street, where Young shot Snow in the neck at nearly
point-blank range, and left him to die in an alleyway.  Notably, at the time of Young's
sentencing, the Court was effectively aware of all of the same information as at the time of
Mack's subsequent sentencing.

At sentencing, the Court took account of Young's acceptance of responsibility, his
"terrible childhood" in which Young was "faced with adversity literally from the very start of
[his] life," and certain positive aspects of his personal life, including his relationship with his
daughter.  (Dkt. 403 at 27-29).  Nevertheless, in sentencing Young to a Guidelines sentence of
240 months' imprisonment, the Court primarily cited Young's shooting of Snow:

> Your crime could scarcely be more serious.  You shot a man,
> known as "Snow," in the back of a neck at nearly pointblank range.
> You did so premeditatedly.  You did so with the intention of
> killing him.  Indeed, you believed you had killed him.  Soon
> afterwards, you bragged to your fellow gang members that you
> had, quote, "bodied" Snow, meaning that you had killed him.  You
> did that after you asked Cruz to take you to Pennsylvania to flee
> the crime.  It was something of a miracle that Snow survived the
> shooting.  But that is no thanks to you. It was your intention that
> [he] die.  And only through some combination of imperfect – and
> effective medical service did Snow survive.
>
> Under these circumstances, the interest in just punishment would
> point toward an extremely high sentence.  One measure of that is
> the federal statute that governs the crime of murder in aid of
> racketeering.  That statute prescribes a mandatory life sentence for
> people convicted of that offense . . . And you did not plead to that
> particular offense, you pled to conspiracy to commit racketeering.
> But had Snow died from the bullet you put in his neck, there's no
> question that the facts would have established your guilt of that
> offense.
>
> *       *       *
>
> Your attempted murder of Snow was, by far, the most serious act
> you've committed in support of Nine Trey, but it was hardly alone.
>
> *       *       *
>
> And so far all of these reasons in terms of that first set of Section
> 3553(a) factors, I find your crime to be deadly serious.  The fact or
> the seriousness of the offense, given the murder that you have tried
> to commit and you believed you had committed, and the other
> aspects of your criminal conduct, would easily justify a sentence
> well above the 20-year count to which your plea agreement

exposes you.  The guidelines, in fact, would otherwise recommend a sentence of 30 years to life.

*      *      *

I fully understand the government's exercise in discretion here to cap your sentencing exposure at 20 years.  That reflected in particular the severe hardships and limitations that you face. . . . In the end, though, I cannot responsibly impose a sentence yet further below the guidelines – I cannot responsibly impose a sentence below that, that the guidelines are capped at the 20-year sentence. The gravity of your crime, particularly the near murder and the need to protect the public and also achieve deterrence all point, in my judgment, to a sentence of 20 years.  The lower sentence, I'm sorry to say, would not capture the heart of the crimes you committed, particularly the attempted murder or sufficiently respect the 3553(a) factors taken in combination.

(Dkt. 403 at 21-24, 30).

Young subsequently appealed his sentence on one of the identical grounds upon which he now seeks compassionate release – by alleging that his sentence was unreasonable because the Court had wrongly applied the base offense level of fentanyl analogue instead of heroin, found a four-point misbranding enhancement applicable, and thus used an incorrect Guidelines benchmark in its § 3553(a) analysis. On March 29, 2021, the Second Circuit dismissed the appeal on the basis of the appeal waiver in Young's plea agreement, holding that Young had not demonstrated that that waiver was unenforceable.  (Dkt. 595) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).

On March 7, 2022, Young filed a § 2255 motion to vacate his sentence recasting his challenges to his sentence as claims of ineffective assistance of counsel.  (Dkt. 627).  This Court rejected that argument, holding that "Young's proposed recalculation rests on a false factual premise: that he sold heroin instead of fentanyl or fentanyl analogue" when, in fact, Young admitted under oath during his plea hearing, that he had conspired to distribute at least nine kilograms of fentanyl analogue, and conceded that he had conspired, as a member of Nine Trey, to mask these drugs as heroin. (Dkt. 639 at 7-8).  This Court further noted that Young's motion ignored that his attorney successfully negotiated a plea to a single count, carrying a 20-year maximum sentence, when Young had been indicted for four federal felonies, including one carrying a minimum of ten years' imprisonment, and that "given the attempted murder of Snow, Young faced the very real prospect of a prison sentence well above 20 years if permitted by the statute(s) of conviction." (*Id*. at 9).  This Court also noted that, even crediting Young's disputed claim that the 4-level misrepresentation enhancement was misapplied, Young would have still faced a Guidelines range of 292 to 365 months' imprisonment, which was well in excess of the 240-month calculation that his counsel achieved by limiting his plea to Count One only.  (*Id*. at 11).  Finally, this Court held that Young's "conduct warranted—indeed, required—a sentence

higher than Mack's. Although both men participated actively in the gang's sales of fentanyl, Young, unlike Mack, participated in a shocking attempted murder." (*Id.* at 12).

On June 6, 2022, Young filed the instant motion for compassionate release. The motion is based primarily on the COVID-19 pandemic and Young's particular risks arising from his underlying health conditions, including Type 2 diabetes and hypertension, among other conditions. The motion also generally attacks the Bureau of Prisons' ("BOP's") efforts to detect, contain, and treat COVID-19. Finally, Young once again regurgitates the argument that he already made on appeal, and again in his 2255 motion – that the Court improperly calculated Young's Guidelines range and issued a disparate sentence vis-à-vis Mack. (Dkt. 650).

On July 1, 2022, Young filed a Notice of Appeal with the Second Circuit, challenging this Court's decision on Young's § 2255 motion. Young's appeal remains pending.

## II. Applicable Law

### A. Notice of Appeal

A notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). That rule applies in criminal cases. *Berman v. United States*, 302 U.S. 211, 214 (1937); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983).

### B. Motion for Compassionate Release

Federal Rule of Criminal Procedure 37 provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons

>warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020). Courts may "look[ ] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Rodriguez*, 16-cr-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting *Brooker*, 976 F.3d at 237); *see also United States v. Burman*, No. 16 CR. 190 (PGG), 2021 WL 681401, at *3 (S.D.N.Y. Feb. 21, 2021).

Thus, in instances such as this, involving a motion brought by the defendant rather than by BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

The Second Circuit did not define what qualifies as "extraordinary and compelling" under the statute, apart from noting the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* at *8.[1]

Even where a defendant can demonstrate "extraordinary and compelling reasons" under Section 3582, the "existence of 'extraordinary and compelling reasons' for a reduction do not mean that a district court *must* release the defendant." *United States v. Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). If a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it must then consider the section 3553(a) factors. Those factors include the nature and circumstances of the offense; the defendant's history and

---

[1] The defendant would not be able to establish "extraordinary and compelling circumstances" under Section 1B1.13 of the Guidelines, and the defendant does not contend otherwise. With respect to the defendant's risk from COVID-19, the Application Notes provide that the medical condition of the defendant provides a basis for release only if "[t]he defendant is suffering from a terminal illness," or has a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environments of a correctional facility and from which he or she is not expected to recover."

characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to provide the defendant with needed medical care; and the need to avoid unwarranted disparities in sentences.

## III.   Discussion

### A.  This Court Lacks Jurisdiction to Grant the Defendant's Motion

As an initial matter, the Court lacks jurisdiction to grant the defendant's motion.  In *United States v. Ransom*, the Court of Appeals held that while the filing of a notice of appeal "does not preclude a district court, after notice of appeal has been filed, from 'correcting clerical errors under Fed. R. Crim. P. 36 or from acting to aid the appeal,'" it does not permit the "substantive modifications of judgments." 866 F.2d 574, 575–76 (2d Cir. 1989) (quoting *Katsougrakis*, 715 F.2d at 776 n.7).  Thus, the Second Circuit held that the district court in that case "lacked authority" to eliminate an unlawful term of supervised release while the defendant's appeal was pending.  *Id.* at 575.[2]  An order granting the defendant's motion to "reduce the term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), would be no less a substantive modification of a judgment than the elimination of a supervised release term. *See Ransom*, 866 F.2d at 576 ("The fact that the [modification] benefits the appellant is not a reason for deeming the District Court authorized to act after notice of appeal has been filed.").  Therefore, this Court lacks jurisdiction to grant the defendant's motion while his appeal remains pending. *See*, *e.g.*, *United States v. Raia*, __ F.3d __, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (considering whether to "return jurisdiction to the District Court" so that it could "consider [defendant's] compassionate release request in the first instance"); *United States v. Cardoza*, 790 F.3d 247, 248 (1st Cir. 2015) ("Because [defendant's] appeal was pending at the time the District Court ruled on his motion to modify the sentence under § 3582(c)(2), we hold that the District Court lacked jurisdiction to enter the order reducing the sentence." (quoting *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015))).

However, under Fed. R. Crim. P. 37(a), the Court can defer ruling on the motion, deny the motion, or make an indicative ruling either that it would grant the motion if the Circuit were to remand or that the motion raises a substantial issue.  If the Court were to issue an indicative ruling, the defendant could promptly notify the Court of Appeals, pursuant to Fed. R. App. P. 12.1(a) and Fed. R. Crim. P. 37(b), and the Court of Appeals could then remand for this Court to decide the motion, pursuant to Fed. R. App. P. 12.1(b) and Fed. R. Crim. P. 37(c). *See*, *e.g.*, *Raia*, 2020 WL 1647922, at *2; *Cardoza*, 790 F.3d at 248; *Maldonado-Rios*, 790 F.3d at 64–65.

---

[2] The Second Circuit noted in dicta that "a district court may not grant a Rule 35[a] motion pending appeal of a judgment, even to correct an illegal aspect of a sentence." *Ransom*, 866 F.2d at 576.  That dicta was abrogated when Federal Rule of Appellate Procedure 4 was amended in 1993 to provide that "the filing of a notice of appeal under this Rule 4(b) does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a)." Fed. R. App. P. 4(b)(5).  *Ransom*'s holding and the principle that district courts lack authority to make "substantive modifications of judgments" while an appeal is pending have not been abrogated. See *United States v. Viola*, 555 F. App'x 57, 69–60 (2d Cir. 2014) (continuing to rely on *Ransom*); *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995) (same).

### B. The Defendant Has Not Shown Extraordinary and Compelling Reasons Warranting a Sentence Reduction to Time Served

Young has not met his burden of demonstrating "extraordinary and compelling" reasons that his sentence should be reduced below what the Court already imposed.

The defendant claims that certain of his medical conditions, including Type 2 diabetes and hypertension, place him at higher risk of developing severe symptoms should he contract COVID-19, and more broadly argues that the BOP facilities in which Young has been incarcerated, have done a generally poor job of testing for and treating COVID-19.  The defendant's arguments should be rejected.

While a review of Young's BOP medical records establish that he suffers from certain underlying health conditions, they also reveal that after initially refusing the COVID-19 vaccine in April 202, Young agreed to and did receive his first dose of the Moderna vaccine on September 7, 2021 and a second dose on October 7, 2021. The defendant is therefore now protected from the disease, regardless of any comorbidities he might have, and fails to establish an "extraordinary and compelling" basis for compassionate release on these grounds. *See United States v. Gomez*, __ F.3d __, 2022 WL 7772745, at *1 (2d Cir. Oct. 14, 2022) (district court did not abuse its discretion in determining that defendant failed to establish extraordinary and compelling circumstances when, despite defendant's vulnerability to severe illness from COVID-19, including Type 2 diabetes, hypertension, and obesity, defendant received both doses of the Moderna COVID-19 vaccine and there were no active COVID-19 cases among inmates or staff at BOP facility where defendant was housed).

Further, if the pandemic alone were evidence of extraordinary and compelling circumstances, it could justify an early release of almost every inmate.  Here, Young has not met his burden of showing that he was so uniquely affected by the pandemic that he should be granted early release.  Importantly, COVID-19 does not appear to pose a major threat to him at this time.  According to the BOP website, as of October 21, 2022, no inmates at FCI Hazelton and only one staff member, currently have COVID-19.

The defendant separately argues that he has established "extraordinary circumstances" by restating the very same arguments that were already made to, and rejected by, the Second Circuit and this Court – that his Guidelines calculation and imposed sentence are unfair and disparate when compared to codefendant Mack.  As this Court clearly held in rejecting Young's § 2255 claim, Young's conduct, both relating to his distribution of fentanyl analogue and otherwise, is entirely distinguishable from Mack's.  First, the trial record established that Mack had a significant, but limited role, in the narcotics distribution conspiracy headed by Young and Cruz. Though it is true that Mack occasionally purchased what Mack generally believed to be heroin from Cruz, Mack had no role in packaging, distributing or misbranding any of the drugs he purchased from Cruz, including after November 2018.  On the other hand, the trial evidence established that Young and Cruz were partners in, among other things: purchasing dozens of kilograms of fentanyl and/or fentanyl analogue from China; storing these drugs (along with firearms) in several locations, including at least one controlled by Young; masking those

substances with cutting agents (and occasionally heroin), so that they could be sold ostensibly as heroin; packaging the drugs into smaller, distribution-level quantities; and selling them to coconspirators like Mack. Young admitted to this conduct through his plea agreement, guilty plea, and the factual recitation of the PSR, to which he did not object.

Further, as Your Honor noted in denying Young's § 2255 claim, even were the Court to entirely cast-away Young's four-point "misbranding" enhancement – which it should not – Young's original Guidelines calculation of 360-to-life would merely be reduced to 292 to 365 months' imprisonment, before ultimately being capped at 240 months due to the statutory maximum for racketeering conspiracy. Put differently, this adjustment would have zero impact on Young's ultimate Guidelines range. More importantly, it would have had no impact on the imposed sentence. As this Court repeatedly noted during Young's sentencing proceeding, and again in denying Young's § 2255 motion, the primary driving force behind Young's imposed sentence was Young's attempt to murder Snow by shooting him at nearly point-blank range in the neck, and leaving him to die on a New York City street. That conduct alone not only justified Young's sentence, but significantly distinguished his conduct from Mack's. As such, Young's "disparate sentence" claim lacks substantive merit, and in any event, fails to demonstrate the sort of extraordinary and compelling circumstances that should justify a reduction of his sentence.

### C. The § 3553(a) Factors Do Not Support Early Release

Even if the defendant had shown that his circumstances were such that he was eligible for a reduction of his sentence—and he has not—the same § 3553(a) factors that the Court considered in imposing the original sentence continue to justify that sentence today.

Nothing about COVID-19 changes the seriousness of Young's crimes and the need for deterrence—both general and specific—through a lengthy prison sentence. As detailed above, Young attempted to murder a fellow Nine Trey member to improve his own status in the gang. He did so by luring Snow to a bar in Brooklyn, then later walking Snow down a dark and deserted street, shooting Snow at nearly point-blank range in the back of the neck, and leaving Snow to die. It is only through the luck – due to both the bullet's trajectory and immediate medical attention – that Snow miraculously survived. As this Court noted at Young's sentencing, "the seriousness of the offense, given the murder that you have tried to commit and you believed you had committed, and the other aspects of your criminal conduct, would easily justify a sentence well above the 20-year count to which your plea agreement exposes you. The guidelines, in fact, would otherwise recommend a sentence of 30 years to life." (Dkt. 403 at 24). But again, Young's conduct was not limited to this shooting. Regardless of his Guidelines calculation, the evidence at trial, and Young's own admissions in his signed plea agreement and at his plea proceeding, establish that Young was personally involved in importing dozens of kilograms of fentanyl and fentanyl analogue – perhaps the deadliest drug sold in the United States – and repackaging and reselling it, so that end-users believed they were taking heroin, when in fact, they were injecting fentanyl or fentanyl analogue, diluted only slightly by a cutting agent, into their veins. Young committed these crimes after sustaining multiple additional criminal convictions across two decades, including for robbery in the first degree. The sentence

Page 10

imposed upon Young was just at the time it was imposed, and remains just today, barely four years (*i.e.*, 20 percent of the way) into his 20-year sentence.

When Young committed these crimes in his mid-30's, he was well past the point when most gang members and drug dealers have aged out of criminal conduct; yet Young had escalated his. A serious sentence was needed to deter him and others from criminal conduct and to address Young's consistent pattern of breaking the law. That need remains the same today.

### Conclusion

Based on all of the foregoing, the Government submits that the defendant cannot establish that his sentence should be reduce, and his motion should therefore be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____/s/_____
    Michael Longyear
    Jonathan E. Rebold
    Assistant United States Attorneys
    (212) 637-2223 / 2512

cc:    Alessandra DeBlasio, Esq. (by ECF)