UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA        :

                                                    :   **Docket No. 18 CR 834-8 (PAE)**
   v.

                                                    :

AARON YOUNG,                    :

        Defendant.         :
_____


**REPLY TO GOVERNMENT OPPOSITION
TO DEFENDANT'S MOTION FOR SENTENCE
REDUCTION AND HOME CONFINEMENT**


ALESSANDRA DeBLASIO
Attorney At Law
299 Broadway, Suite 1803
New York, NY  10007
(212) 321-7084

Attorney for Defendant Aaron Young

**REPLY TO GOVERNMENT RESPONSE**

Defendant Aaron Young comes now before this Court, by and through his attorney, Alessandra DeBlasio, in reply to the Government's response dated October 21, 2022. We agree with the Government that, despite the pending appeal of his dismissed § 2255 petition, this Court may make an indicative ruling on the instant motion for compassionate release. *See* Dkt. 658 "Gov't Resp." at 7. We ask that the Court now make such an indicative ruling, stating "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

Having already written at great length in support of Mr. Young's request for release, this reply will be succinct.

I.

In opposition to the *first* "extraordinary and compelling reason" we raised – that on account of comorbidities (diabetes chief among them), Mr. Young is at heightened risk of both contracting and succumbing to COVID-19 (Dkt. 647 "Memo" at 9-14) – the Government argues that the claim must fail because Mr. Young is vaccinated and "therefore now protected from the disease, regardless of any comorbidities." Gov't Resp. at 8.

First, the Government cites no medical authority to assert that an individual with Mr. Young's comorbidities – or indeed any individual – is protected from

COVID once vaccinated. Mr. Young, on the other hand, cited medical authority that vaccination is no guarantee against contracting COVID. *See* Memo at 6 n.1 & 7-8. Moreover, by now our own life experience tells us that vaccination is no guarantee, with virtually everyone in our tri-state community knowing at least one vaccinated individual who has contracted COVID. (Undersigned counsel's entire vaccinated and boosted extended family contracted COVID immediately following a once-in-40-year family reunion in Idaho this past summer).

Second, Mr. Young cited many cases where courts have granted compassionate release motions despite a defendant's vaccinated status. *See* Memo at 6-8 & n.3. The Government cited only a single case where a court denied a vaccinated defendant compassionate release, and in that particular instance because there were *no active COVID cases* at the Bureau of Prisons ("BOP") facility where he was housed. *See* Gov't Resp. at 8. *Mr. Young was just transferred to Coleman Medium FCI on November 10, 2022, where there are currently <u>three active cases of COVID</u>, and where 5 inmates have died. See* [BOP: COVID-19 Update](#) (as of Nov. 12, 2022).

## II.

With regard to the *second* "extraordinary and compelling reason" we raised – that the BOP's gross neglect and inadequate treatment of Mr. Young at four correctional facilities (three during the COVID pandemic) allowed his diabetes to

3

go unchecked and progress to a life-threatening level (see Memo at 14-41) – the Government's response was silent.

This Court may grant compassionate release to an inmate who has not received appropriate medical care in BOP custody, as have other district courts. *See, e.g.*, *United States v. Nieves-Feliciano*, No. 3:19-cr-0135, 2021 WL 1170317, at *5 (D. Conn. Mar. 29, 2021) (granting compassionate release, after completion of 22 months of a 46-month sentence, for a defendant with "obesity, an unspecified circulatory system disorder, and elevated liver enzyme levels, coupled with the inadequate care he has been receiving in BOP custody."); *United States v. Roach*, 5:97-cr-500041, 2021 WL 149083, at *3 (D.S.D. Jan. 15, 2021) (granting compassionate release, with 30 months remaining on defendant's sentence, noting that she "has a complicated medical history that is currently not being well managed"); *United States v. Baylor*, No. 16-cr-0180, 2020 WL 5970679, *2 (D.D.C. Oct. 8, 2020) (granting compassionate release, after completion of 50% of a 25-month sentence, because "the Court is not confident that [the defendant's] complex medical conditions are being adequately managed.").

The Government missed this claim completely, misapprehending Mr. Young's motion as one based merely on COVID-19 susceptibility. We ask the Court to consider this separate, independent "extraordinary and compelling reason."

4

III.

The overwhelming thrust of the Government's opposition to Mr. Young's motion is that he originally received a just sentence for committing a *very serious offense*, and so does not deserve release on "compassionate" grounds no matter what his current circumstances. See Gov't Resp. at 9-10. The Government's position runs afoul of the Second Circuit's directive in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), requiring consideration of all the relevant circumstances *at the time of the pending motion*, not the initial sentencing. And it ignores the practice in this District of granting compassionate release, where a defendant presents with extraordinary and compelling circumstances, without regard to the length of the original sentence upon conviction for a *very serious offense*. See, e.g., *United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020) (Crotty, J.) (granting compassionate release to a defendant involved in a violent narcotics ring and believed to have personally committed **four murders**); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (Rakoff, J.) (granting compassionate release for defendant convicted of the **murder** of a government informant); *United States v. El-Hanafi*, 460 F. Supp. 3d 502 (S.D.N.Y. 2020) (Wood, J.) (granting compassionate release after providing material support to Al Queda); *United States v. Underwood*, No. 88-cr-822, 2021 WL 3204834 (S.D.N.Y. Jan. 15, 2021) (Stein, J.) (granting compassionate release to the leader of a violent heroin-trafficking organization who

5

directed at least five "brutal and calculated" **murders**) *United States v. Gluzman*, No. 7:96-cr-323, 2020 WL 4233049 (S.D.N.Y. July 23, 2020) (Liman, J.) (granting compassionate release for a defendant convicted of **premeditated murder**), & *Gluzman*, 2020 WL 6526238 (S.D.N.Y. Nov. 5, 2020) (Liman, J.) (denying Government motion to reconsider); *United States v. Gonzalez*, No. 12-cr-326, 2020 WL 2766048 (S.D.N.Y. May 28, 2020) (Furman, J.) (granting compassionate release after a "career of crime spanning from 1997 to 2011").

IV.

Finally, while not release-determinative, we wish to note inaccuracies and mischaracterizations in the Government's response. For example, the Government wrote: "The defendant separately argues that he has established 'extraordinary circumstances' by restating the very same arguments that were already made to, *and rejected by*, the Second Circuit." Gov't Resp. at 8 (italics added). This statement is incorrect, as is the intimation that this Court must therefore now reject Mr. Young's compassionate release motion. The Second Circuit did not reach the merits of and/or reject any of Mr. Young's substantive arguments; the court dismissed the appeal solely on account of the appeal waiver.

The Government stated more than once that Mr. Young was Kristian Cruz's "partner." Gov't Resp at 2, 8. He was not. Cruz was the importer, the one with money, the one with brains, the mastermind who started the fentanyl importation

6

business and then brought it to the Nine Treys. Mr. Young was no "partner," and the insinuation that he was – suggesting some sort of leadership role in this gang and so less deserving of compassion – is improper and belied by both the evidence that Mr. Young lacked rank in the Nine Treys and by the absence of a role-in-the-offense sentencing adjustment.

Nor was Mr. Young an "enforcer" in the crew, as the Government labeled him when opposing the instant motion. *See* Gov't Resp at 2. He was not a part of that side of the conspiracy: he was no Jordan, no Jones, and he was certainly no Cruz, who admitted to shooting people himself as well as directing others to shoot people for him. *See* trial transcripts Dkt. 346 at 873, 913, 952-53; Dkt. 351 at 1552. Indeed, it was *precisely* because Mr. Young was a *non-enforcer* in this crew that Cruz chose him to go after his rival Snow: Snow would never see a "hit" coming from Cruz's intellectually-challenged drug-packaging side-kick Aaron Young. Moreover, the attempt on Snow's life was the only instance of Mr. Young committing an act of violence during the entire course of the conspiracy, and indeed in the entire four decades of Mr. Young's life. Mr. Young was no "enforcer," but a simpleton duped into a horrible act.

It piques a bit as well when the Government emphasizes Mr. Young's "lengthy criminal history . . . includ[ing] a robbery," without including the modifier that the robbery was when he was just 15, and that all adult convictions were for no

more than the now-decriminalized possession of personal-use amounts of marijuana (and two instances of possession of personal-use amounts of an unspecified controlled substance). Mr. Young's Criminal History Category was II, comparing quite favorably to the rest of the Nine Trey co-conspirators, who truly had lengthy, serious criminal histories, which landed most of them in Categories V and VI.

Finally, the Government significantly mischaracterizes Mr. Young's role leading up to the shooting to which he pled guilty: "The Court had also heard testimony about how *Young lured Snow* to a Brooklyn bar." Gov't Resp. at 2-3, & 9 (italics added). To the contrary, Cruz's testimony on cross-examination was that, having listened to a recording a month earlier that Snow was out to kidnap and kill him, he (Cruz) went to pick up Mr. Young and then together they went around the corner to a bar where they met up with Snow, *whom Cruz had invited out to meet up with girls at the W Hotel*, purportedly to celebrate his (Snow's) birthday. The testimony was not that Mr. Young lured Snow, but that Cruz did. Cruz was the one who felt threatened by Snow, and the one who planned to get to Snow, before Snow could get to him. *See* trial transcript, attached as sealed Exhibit 9 to the motion, at 1343-50.)

## V.

Assembled considerations, separately and in conjunction with one another, provide extraordinary and compelling reasons justifying Mr. Young's early release.

8

These considerations include: (1) the heightened vulnerability to COVID-19 that Mr. Young faces due to his significant and serious medical conditions, as of this week in a BOP facility with active COVID-19 cases; (2) the gross neglect and life-threateningly inadequate treatment he has received to date in BOP custody; (3) the unexpectedly punishing quality of the 47 months that he has spent in custody, most of it during the unprecedented pandemic, including the first six months of the pandemic at MDC-Brooklyn, among the worst of America's detention centers; and (4) intervening changes in law rendering Mr. Young's sentence disparate and unjust.

Accordingly, we ask this Court to grant Mr. Young's motion for compassionate release from prison to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

Date: November 12, 2022      */s/ Alessandra DeBlasio*
ALESSANDRA DEBLASIO, ESQ.
Attorney At Law
299 Broadway, Suite 1803
New York, NY 10007
ad@adeblasiolaw.com
Tel. (212) 321-7084
Fax (973) 689-2765
*Attorney for Aaron Young*