UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

AARON YOUNG,

Defendant.

18 Cr. 834-08 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received a motion from defendant Aaron Young, seeking compassionate release from Federal Correctional Institution ("FCI") Hazelton, in West Virginia, pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 650 ("Def. Mtn."). For the reasons that follow, the Court denies the motion.

## I.      Background

Young's offense conduct, as admitted in his guilty plea to racketeering conspiracy and in the unobjected-to presentence report ("PSR"), is briefly summarized. Between 2013 and 2018, Young was a member of the violent Nine Trey Gangsta Bloods gang ("Nine Trey"). Along with a fellow gang member, Kristian Cruz, Young participated in the highly destructive conduct of distributing—packaging, selling, and transporting—at least nine kilograms of fentanyl analogue. Young and Cruz misrepresented to purchasers that these substances were heroin, a less lethal drug. Young also possessed a firearm in connection with, and in furtherance of, the narcotics conspiracy. On January 19, 2018, Young committed an attempted murder. With premeditation and at nearly point-blank range, he shot a man known as "Snow" in the back of the neck. Young did so to retaliate against Snow, a rival within the gang, and to enhance Young's role in the Nine Trey organization. Snow had threatened to kill or kidnap Cruz and Jamel Jones, who held the

post of "godfather" within Nine Trey.  Unaware of Snow's survival, Young boasted to his fellow gang members shortly after the shooting that he had "bodied"—that is, killed—Snow.  *See* Dkt. 639 ("§ 2255 Decision") at 2 (citations to PSR and sentencing transcript omitted).

In January 2019, Young was indicted on charges of racketeering conspiracy, narcotics trafficking, and possession and use of a gun in furtherance of these offenses.  *See* Dkt. 91.  On April 19, 2019, Young pled guilty, pursuant to a plea agreement, to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  The plea to the racketeering conspiracy offense, which carried a 20-year statutory maximum penalty, capped Young's prison sentence at 240 months, far below the advisory Guidelines range (360 months to life) that otherwise would have applied.  § 2255 Decision at 2–3.  On December 2, 2019, the Court sentenced Young to a 240-month term of imprisonment.  The Court explained at length its bases for this sentence, finding such a sentence necessary to achieve the sentencing goals set out in 18 U.S.C. § 3553(a).  Among other things, the Court noted the gravity of the attempted murder and the fentanyl sales and Young's substantial criminal history.  *Id.* at 3–4.

On December 9, 2019, Young, *pro se*, appealed.  Dkt. 383.  He argued that his sentence was procedurally and substantively unreasonable.  *See* Dkt. 630 at 3–4.  On January 15, 2021, the Second Circuit dismissed the appeal on the basis of an appeal waiver in Young's plea agreement, holding that Young had not demonstrated that the waiver was unenforceable.  Dkt. 595 (court of appeals mandate, dated March 29, 2021).

On March 7, 2022, Young, again *pro se*, filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, casting his challenge as to the ineffective assistance of counsel.  Dkt. 627.  On May 24, 2022, the Court, in a 14-page decision, denied that petition.  *See* § 2255 Decision.  Rejecting Young's claims, the Court found that defense counsel's performance

had satisfied professional norms of reasonableness and that counsel had not been ineffective in failing to challenge a four-level enhancement under the Sentencing Guidelines for misrepresenting fentanyl as heroin, or the fact that Young's sentence was 36 months above the 204-month sentence imposed on co-defendant Aljermiah Mack, a co-conspirator in the gang's narcotics operations who went to trial. *See id.* at 6–13. The Court further found that Young had not demonstrated prejudice on account of counsel's asserted errors. *See id.* at 13–14. On July 1, 2022, Young appealed that decision. Dkt. 651.

On June 6, 2022, Young, counseled, moved for compassionate release, in light of the risk he asserts the COVID-19 pandemic presents to his health. Def. Mtn. On October 21, 2022, the Government opposed this motion. Dkt. 658 ("Gov't Opp."); *see also* Dkt. 661 ("Def. Reply").

On January 20, 2023, while the compassionate release motion was pending, the Second Circuit denied Young's motions for a certificate of appealability and *in forma pauperis* status and dismissed his appeal of the decision denying his § 2255 motion, on the grounds that Young failed to make "a substantial showing of the denial of a constitutional right." Dkt. 666 (quoting 28 U.S.C. § 2253(c)(2)) (court of appeals mandate, dated March 27, 2023).

**II.    Discussion**

   **A.    Standards Governing Compassionate Release Motions**

   "[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United*

3

*States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. It does not apply "to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought by an imprisoned defendant and not the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary

and compelling reasons and may "consider the full slate of extraordinary and compelling reasons

that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at

237. Even if such reasons are present, the Court must also assure itself that release is consistent

with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C.

§ 3582(c)(1)(A).

    **B.**    **Analysis**

    As an initial matter, because the Second Circuit has dismissed Young's appeal of the

§ 2255 decision, the Court does not have occasion to consider the parties' arguments as to

whether it should enter an indicative ruling, under Federal Rule of Criminal Procedure 37, on the

compassionate release motion. The Court has jurisdiction to consider the motion and, reaching

the merits, denies the motion, for the following two reasons.

    *First*, the Court does not find extraordinary and compelling circumstances sufficient to

justify a reduction of sentence. Although Young identifies various mitigating facts affecting his

custody, the anchor of his argument is that COVID-19 presents a risk to his health. As to that

claim, he notes that he has underlying health conditions, predominantly Type 2 diabetes and

hypertension, that heighten the risks presented by COVID-19. Young's motion, however, all but

ignores the present state of the pandemic. In the months immediately after the pandemic struck

in March 2020, numerous courts, including this Court, found or assumed extraordinary and

compelling circumstances to exist where a defendant's underlying respiratory or other medical

conditions exposed them to a heightened risk of death or grave suffering from COVID-19, which

was then taking lives on an alarming scale.[1]

---

[1] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Doc. No. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking

Young's § 3582(c) motion, however, was filed in June 2022, some 27 months after COVID-19 emerged and some 15 months after vaccinations against the disease became widely available. As Young's Bureau of Prisons medical records reflect, Young initially (in April 2020) declined vaccination, but later changed course, receiving first and second doses of the Moderna vaccine on September 7 and October 7, 2021, respectively. Gov't Opp. at 8. Young has not adduced evidence that, with the benefit of such vaccinations (and ensuing booster shots), his underlying medical conditions present a sufficiently grave risk from COVID-19 to make his medical circumstances extraordinary and compelling. *See, e.g.*, *United States v. Gonzalez-Casillas*, No. 07 Cr. 527-1 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022) (denying release request where defendant had not shown himself more vulnerable to COVID-19 than average inmate at his facility and had been vaccinated); *United States v. O'Bryant*, No. 16 Cr. 317-3 (PAE), 2022 WL 17168192, at *3 (S.D.N.Y. Nov. 22, 2022) (same); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (denying release request where defendant had been vaccinated, making him "no longer at high risk for severe illness caused by COVID-19"). Young's critiques of the BOP's initial response to the pandemic, and of its medical capabilities and track record with respect to testing for and treating COVID-19 and other medical conditions at the prior facilities at which he was held—including

---

conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, 469 F. Supp. 3d 175, 180 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, 467 F. Supp. 3d 209, 213 (S.D.N.Y. 2020) (same); *United States v. Jasper*, No. 18 Cr. 390-18 (PAE), 2020 WL 1673140, at *2 (S.D.N.Y. Apr. 4, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

the Metropolitan Correctional Center, the Metropolitan Detention Center, and FCI Raybrook—
are not responsive to this present-day reality. *See* Def. Mtn. at 16–24.

Young's critiques of the medical- and dental-care capabilities and competencies at FCI
Hazelton, where he is presently held, are responsive—and dismaying. The Court expects the
Justice Department, of which BOP is a component, to attend to these circumstances with
urgency. The shortcomings at FCI Hazelton that Young spotlights, however, are of broad
application. Ultimately, they do not reveal a degree of medical risk from COVID-19 to Young,
post-vaccination, that qualifies as extraordinary or compelling. *See, e.g., United States v.
Mustafa*, No. 93 Cr. 203 (LGS), 2023 WL 2016581, at *4 (S.D.N.Y. Feb. 15, 2023) (finding no
extraordinary and compelling reasons for sentence reduction even where defendant's medical
conditions were "exacerbated by" the COVID-19 pandemic and "not under control" for a period
of time); *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y.
Dec. 27, 2022) (denying compassionate release of defendant who has "not demonstrated
concretely that the prison conditions he face[s] . . . [are] especially severe, so as to rise to the
level of extraordinary and compelling circumstances justifying early release"); *United States v.
Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL 807128, at *3 (S.D.N.Y. Mar. 3, 2021) (same).
As the Government notes in its opposition memo of October 21, 2022, the data then available on
the BOP's website revealed that no inmates at FCI Hazelton, and only one staff member, had
COVID-19 at the time. Gov't Opp. at 8. Current data is in accord. Fed. Bureau of Prisons, *BOP
COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed
Apr. 11, 2023) (indicating that three inmates and zero staff members were currently testing
positive for COVID-19).

Young's other principal argument why his circumstances satisfy § 3582(c)'s threshold standard turns on the sentencing of co-defendant Mack. He notes that Mack's 17-year sentence was three years shorter than his, despite Mack's having been charged with similar offenses to Young (that is, racketeering conspiracy in connection with Nine Trey, and narcotics distribution) and having gone to trial. That argument is highly unpersuasive. As the Court noted both at Young's sentencing and again in denying his § 2255 petition, the fact that overwhelmingly drove Young's 20-year sentence was his attempted murder of Snow. It involved shooting Snow in the neck from point-blank range and leaving him to die on a New York City street. Mack's offense conduct did not involve anything of the sort. It predominantly involved narcotics dealing, based on Mack's role in the narcotics operations of Nine Trey headed by Cruz in which Young actively participated. The sentences imposed in the Mack and Young cases are easily harmonized, as the Court explained in responding to Young's similar argument in his § 2255 petition, *see* § 2255 Decision at 12–13, and Mack's sentence does not give rise to an extraordinary and compelling circumstance for Young.

Relatedly, Young, as in his § 2255 petition, seeks to relitigate the calculation of his Guideline range, based on the fact that the narcotic for which Mack was held accountable at sentencing was heroin, whereas Young was held accountable for distributing fentanyl analogue. That was an artifact of Mack's claim to have believed that the drug he was selling was heroin, which the Government, for purposes of Mack's sentencing, elected not to litigate. Young, in contrast, at his guilty plea, admitted knowingly dealing fentanyl analogue, and indeed packaging it as heroin. As the Court noted in rejecting a similar claim in Young's § 2255 petition, Young, having so allocuted, cannot take that admission back. *See id.* at 7–8. In any event, as the Court noted in resolving Young's § 2255 petition, even had Young's offense level been four points

8

lower as Young proposed, it still would have exceeded the 240-month maximum sentence statutorily allowable—and the sentence imposed, which was driven by the § 3553(a) factors and not the Guidelines range, would have been the same.

The Court accordingly does not find extraordinary and compelling circumstances justifying a reduction of sentence.

*Second*, even assuming such circumstances existed, the § 3553(a) factors would not and could not justify a reduced sentence. At sentencing, the Court expanded at length on why those factors demanded the statutory maximum sentence. *See generally* Dkt. 403 ("Sent. Tr.") at 21–30. And the Court reiterated this conclusion in resolving Young's § 2255 petition. *See* § 2255 Decision at 9–10.

The Court's assessment and conclusion remain the same today. In brief, Young attempted to murder another human being, Snow, by shooting him in the back of the neck; and he did so in the service of a violent gang, in whose drug-dealing activities Young had actively engaged. He engaged in this criminal conduct undeterred by his prior extensive brushes with the criminal law, including a conviction for robbery in the first degree, and in his mid-30s, well past the point at which a defendant can credibly claim to have acted out of youth and immaturity. In these circumstances, the Court explained at sentencing, the § 3553(a) factors—including to effectuate the interests of just punishment, promotion of respect for the law, general and specific deterrence, and protection of the public—demanded a 20-year sentence notwithstanding various mitigating circumstances in Young's background. *See* Sent. Tr. at 21–31.

For these reasons, the Court denies Young's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: April 14, 2023
        New York, New York